**Simon B. THEN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. Civ.A. 98–5523 (AJL).**

United States District Court, D. New Jersey.

Dec. 14, 1998.

Simon B. Then, South Kearny, NJ, petitioner pro se.

Andreas Quarantino, District Director of U.S. Immigration and Naturalization Service, Newark, NJ, for respondent.

Faith Hochberg, United States Attorney, Dan Gibbons, Assistant United States Attorney, Newark, NJ, for U.S.

OPINION

LECHNER, District Judge.

This is an action brought by the *pro se* petitioner, Simon B. Then (the "Petitioner" or "Then"), a detainee at the Detention Center of the Immigration and Naturalization Service (the "INS"), Jersey City,

New Jersey, against the respondent, the INS. Presently pending is the petition (the "Petition") of Then for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 ("Section 2241"), seeking, *inter alia,* a preliminary injunction (the "Preliminary Injunction Application") enjoining the deportation of the Petitioner from the United States and relief from a final order of deportation (the "Final Order of Deportation").[1]

For the reasons set forth below, the Preliminary Injunction Application is denied.

*Background*

The Petitioner is a native and citizen of the Dominican Republic. *See* Petition at ¶ 5. He entered the United States in 1983. *See id.* at ¶ 7.

In October 1993, a State grand jury indicted Then in a four-count indictment (the "Indictment"). The first two counts of the Indictment charged Then with possession of a controlled dangerous substance with intent to distribute, in violation of N.J.S.A. 2C:35–10a(1) and 2C:35–5a(1) & b(3). *See* Judgment of Conviction and Order of Commitment (the "Judgment and Order"). Count three ("Count Three") of the Indictment charged Then with possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, in violation of N.J.S.A. 2C:35–7 and 2C:35–5a. *See id.* The fourth count charged Then with violating N.J.S.A. 2C:28–4a for writing false reports. *See id.*

On 15 March 1995, the Petitioner pleaded guilty to Count Three of the Indictment (the "Guilty Plea"). *See* Then Aff. at ¶ 4. A judgment of conviction (the "Judgment of Conviction") was issued by the New Jersey Superior Court, Law Division, Passaic County, on 30 June 1995. *See* Judgment and Order. On the same date, the Petitioner was sentenced to a minimum

---

1. In support of the Petition, Then submitted: the Petition and the Affirmation of Facts (the "Then Aff."), attaching exhibits.

prison term of fourteen months. *See* Then Aff. at ¶ 5; Judgment and Order.

The Guilty Plea rendered Then deportable pursuant to § 241(a)(2)(B)(i) ("Section 241") of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i) (formerly 8 U.S.C. § 1251).[2] Consequently, upon his completion of the fourteen month prison term, Then was placed by the INS in deportation proceedings. *See* Then Aff. at ¶ 3.

On 7 March 1997, deportation proceedings (the "7 March 1997 Deportation Proceedings") were held before immigration judge John A. Duck (the "Immigration Judge"). In an oral decision, dated 7 March 1997, (the "7 March 1997 Decision"), the Immigration Judge refused to grant the application of Then for a waiver of deportation (the "212(c) Application"), pursuant to § 212(c) ("Section 212(c)") of the INA, 8 U.S.C. § 1182(c).[3] In this regard, the Immigration Judge stated:

> [Then] has asked to apply, through counsel, for a 212(c) waiver. However, I note that the respondent [Then] has been convicted for the crime of possession of cocaine and heroine with intent

to distribute within 1,000 feet of a school. I find, therefore, that that [sic] crime is an aggravated felon [sic], making him ineligible for that 212(c) waiver sought by the respondent. There is not [sic] other relief sought nor is there any known by the government or this Court.... Therefore, it is the order of the Court that the respondent be deported from the United States to the Dominican Republic....

7 March 1997 Decision at 1–2.

It appears the Immigration Judge, in refusing to entertain the 212© Application,, placed reliance upon Section 241(a)(2)(B)(i) of the INA. *See* 8 U.S.C. § 1227(a)(2)(B)(i); *see also supra* n. 2. It further appears the Immigration Judge took into account § 440(d) ("Section 440(d)") of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, tit. I, § 105(2), 110 Stat. 1214 (24 April 1996) (the "AEDPA"). Section 440(d) added the following language to Section 212(c):

> This section shall not apply to an alien who is deportable by reason of having committed any criminal offense covered

---

**2.** Section 241 provides, in pertinent part:

> (a) *Classes of deportable aliens*
> Any alien ... in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
> (2) *Criminal Offenses*
> (B) *Controlled Substances*
> (i) *Conviction*
> Any alien who at any time after admission has been convicted of a violation of (or conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
> 8 U.S.C. § 1227(a)(2)(B)(i).

**3.** Before recent amendments to Section 212(c) and its eventual repeal, as more fully discussed below, Section 212(c) authorized the Attorney General to waive deportation or exclusion for aliens subject to final orders of deportation or exclusion who have had "law-

ful unrelinquished domicile" for seven consecutive years. Section 212(c) provided, in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....
> 8 U.S.C. § 1182(c) (1994 ed.)

While Section 212(c) appeared on its face to apply only to aliens who seek to re-enter the country, it has been extended to apply to deportation proceedings as well. *See Morel v. INS*, 90 F.3d 833, 837 (3d Cir.1996), *vacated on other grounds*, 144 F.3d 248 (3d Cir.1998); *Katsis v. INS*, 997 F.2d 1067, 1070 (3d Cir. 1993), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93; *Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976); *Matter of Silva*, Int.Dec. 2532 (BIA 1976) (adopting *Francis* nationwide). The Petitioner entered the United States in 1983; it appears he has obtained more than seven years of lawful domicile. *See* Petition at ¶ 7.

in Section 241(a)(2)(A)(iii)[aggravated felony], *(B) [controlled substance offenses]*, (C) [firearms offenses], or (D) [offenses against national security] .... AEDPA § 440(d), 110 Stat. 1214, 1217 (emphasis added).[4] Based upon the Judgment of Conviction of Then which, as stated, falls under Section 1227(a)(2)(B)(i), the Immigration Judge found Then statutorily ineligible for a waiver under Section 212(c).

At the 7 March 1997 Deportation Proceedings, Jose W. Vega, Esq. ("Vega"), appeared on behalf of Then. *See* Then Aff. at ¶¶ 7, 8.

Vega also appealed the 7 March 1997 Decision to the Board of Immigration Appeals (the "BIA") on 10 April 1997 (the "Appeal"). *See* Then Aff. at ¶ 10. In support of the Appeal, Vega, on behalf of Then, argued:

> The Respondent [Then] should be eligible for a 212(c) waiver. He was convicted prior to the enactment of the Antiterrorism and Effective Death Penalty Act. This Act should not be applied retroactively. Furthermore, the Respondent is being denied equal protection of the laws by not being allowed an opportunity to apply for a 212(c) waiver because if he was in exclusion proceedings he would be eligible for this waiver. *See Matter of Silva*, 16 I & N Dec 26 (BIA 1996)[sic].

*See* Appeal.

By order, dated 28 January 1998, (the "28 January 1998 Order"), the BIA deemed the Appeal untimely, because it was not filed within thirty calendar days of the 7 March 1997 Decision. *See* 28 January 1998 Order. The BIA stated: "[t]he Immigration Judge's decision is accordingly now final[.]" *See id.*; Then Aff. at ¶ 10.

Following the denial of the Appeal by the BIA, Vega indicated to Then's family, via fax transmittal (the "Vega Facsimile"), that even if timely filed, the Appeal would have been denied because the AEDPA is applied retroactively to all cases by the BIA. *See* Then Aff. at ¶ 11; Vega Facsimile attached thereto.

In support of the Preliminary Injunction Application, the Petitioner alleges, *inter alia*, his constitutional right to due process was violated when the Immigration Judge retroactively applied the AEDPA to bar his 212(c) Application. *See* Petition at ¶¶ 2, 3, 16–17. The Petitioner also alleges Vega waived his rights to a fair hearing before the Immigration Judge by admitting all the charges lodged against him by the INS without his permission. *See id.* at ¶ 3; Then Aff. at ¶ 8. The Petitioner further alleges Vega, despite knowing an appeal not filed by 7 April 1997 would be deemed untimely, nevertheless filed the Appeal on 10 April 1997. *See* Then Aff. at ¶ 10. Then specifically alleges the Appeal

> d[id] not examine the legal consequences derived from the [Immigration Judge's] retroactive application of the [AEDPA] enacted by April 24, 1996, enacted by April 24, 1996.... I was placed in deportation proceedings for a drug-posses-

---

4. As discussed below, Section 440 of the AEDPA was amended by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, Div.C., § 309(c), 110 Stat. 3009, 626–27 (30 September 1996). Specifically, the IIRIRA repealed Section 212(c), 8 U.S.C. § 1182(c). The repeal of Section 212(c), as previously amended by Section 440(d), does not affect cases where the final order of deportation was entered more than thirty days after the enactment date of the IIRIRA (30 September 1996) and before its effective date (1 April 1997). In such cases, transitional rules of the IIRIRA apply. The transitional rules of the IIRIRA "differ[ ] only trivially from that of AEDPA § 440(d) ...." *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997); *see Matter of Fuentes–Compos,* Int.Dec. 3318, 1997 WL 269368 (BIA 14 May 1997).

The Immigration Judge issued the Final Order of Deportation on 7 March 1997. Consequently, the transitional rules of the IIRIRA govern the instant action. Because the restructuring language of the IIRIRA does not affect the outcome of this case, for purposes of this opinion, Section 440(d) of the AEDPA is deemed to include the technical amendments of the IIRIRA.

sory crime committed on October 26, 1993, at least 2 years before the creation of the aforesaid statutes by Congress. Petition at ¶ 2.

The Petitioner requests a preliminary injunction enjoining the INS from deporting him and release from his present incarceration at the Detention Center pending "a full and fair hearing on the merits of the 212(c) case." *See id.* at Prayer for Relief.

*Discussion*

A. *Standard of Review for Pro Se Submissions*

■ *Pro se* submissions, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (holding *pro se* petition cannot be held to same standard as pleadings drafted by attorneys); *Lewis v. Attorney General of United States,* 878 F.2d 714, 722 (1989).

■ When receiving a *pro se* submission from a habeas petitioner, the habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis,* 878 F.2d at 721; *United States v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969), *cert. denied,* 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970) ("We should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.' It is the policy of courts to give a liberal construction to pro se habeas petitions.") (citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines,* 404 U.S. at 520, 92 S.Ct. 594; *Roman v. Jeffes,* 904 F.2d 192, 197 (3d Cir.1990).

B. *Standard for Preliminary Injunctive Relief*

■ Injunctive relief is an extraordinary remedy. When reviewing the Preliminary Injunction Application of the Petitioner, the following four factors (the "Injunction Factors") must be considered:

(1) the likelihood that [Then] will prevail on the merits at final hearing;

(2) the extent to which [Then] is being irreparably harmed by the conduct complained of;

(3) the extent to which [the public] will suffer irreparable harm if the preliminary injunction is issued; and

(4) the public interest.

*See, e.g., Pappan Enters. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 803 (3d Cir.1998); *AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied,* 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir.1994); *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3d Cir.1992); *Opticians Ass'n of Am. v. Independent Opticians of Am.,* 920 F.2d 187, 191–92 (3d Cir.1990); *Alessi by Alessi v. Com. of Pennsylvania, Dept. of Public Welfare,* 893 F.2d 1444, 1447 (3d Cir.1990); *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 799 (3d Cir.1989); *Fechter v. HMW Indus., Inc.,* 879 F.2d 1111, 1116 (3d Cir. 1989); *Genovese Drug Stores, Inc. v. TGC Stores, Inc.,* 939 F.Supp. 340, 343 (D.N.J. 1996); *Apollo Technologies Corp. v. Centrosphere Indus.,* 805 F.Supp. 1157, 1191 (D.N.J.1992); *Glenside West Corp. v. Exx-*

on Co., U.S.A., 761 F.Supp. 1118, 1132 (D.N.J.1991); CPC Int'l, Inc. v. Caribe Food Distribs., 731 F.Supp. 660, 664 (D.N.J.1990); Bascom Food Products Corp. v. Reese Finer Foods, Inc., 715 F.Supp. 616, 624 (D.N.J.1989).

█ The grant or denial of a preliminary injunction application lies within " 'the sound discretion of the district judge, who must balance all of [the Injunction F]' " FM 103.1, Inc. v. Universal Broadcasting of N.Y., Inc., 929 F.Supp. 187, 193 (D.N.J.1996) (citing Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982); Atlantic Coast Demolition v. Board of Chosen Freeholders of Atlantic Cty., 893 F.Supp. 301, 307 (D.N.J.1995)).

Of the Injunction Factors, the Circuit has placed particular emphasis on the likelihood of success on the merits and the probability of irreparable harm, stating: " '[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.' " Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir.1982)); see also Instant Air, 882 F.2d at 800; Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987); Sky Vue, 759 F.2d at 1098–99; Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir. 1984).

As explained more fully below, the Petitioner has not established a reasonable likelihood of success on the merits. Specifically, the Petition does not contain allegations of serious constitutional error sufficient to invoke the subject matter jurisdiction of the court. Because Then has not demonstrated the existence of subject matter jurisdiction, much more

the likelihood of success on the merits, it is unnecessary to consider the remaining Injunction Factors.

### C. Application of the AEDPA

As discussed, Section 440(d) of the AEDPA, which amended in part Section 212(c), forecloses reliance by an alien on Section 212(c) if the alien committed any criminal offense covered in Section 1227(a)(2)(A)(iii), (B), (C), or (D).[5] See AEDPA § 440(d), 110 Stat. 1214, 1217 (amending 8 U.S.C. § 1182(c)); see also Avelar Cruz v. Reno, 6 F.Supp.2d 744, 751 (N.D.Ill.1998); Sandoval v. Reno, No. 97–7298, 1997 WL 839465, at *3 (E.D.Pa.30 Dec.1997). Consequently, even if the criminal alien has maintained lawful, unrelinquished domicile in the United States for seven consecutive years pursuant to Section 212(c), he or she remains subject to deportation. See 8 U.S.C. § 1182(c). It appears at the 7 March 1997 Deportation Proceedings, the Immigration Judge applied Section 440(d) to bar the 212(c) Application. But for the application of Section 440(d), Then would have been eligible for a waiver pursuant to Section 212(c) because he has maintained unbroken domicile in the United States for more than seven years. See 7 March 1997 Decision.

#### 1. Subject Matter Jurisdiction

##### a. Direct Review of Deportation Proceedings

As a threshold matter, it is necessary to examine whether subject matter jurisdiction exists to hear the Petition. The Petitioner cites to Morel v. INS, 90 F.3d 833 (3d Cir.1996) ("Morel I ") in support of his contention that the courts may afford him relief from the retroactive application of Section 440 of the AEDPA to his 212(c) Application. See Petition at ¶ 16.[6]

---

**5.** The list of offenses include aggravated felony, violation of or conspiracy to violate controlled substance laws, purchase or sale of certain firearms, espionage, treason, threats against the President, expeditions against friendly nations, violations of the Military Selective Service Act or Trading With the Ene-

my Act and unauthorized entry or departure by aliens. See 8 U.S.C. § 1227(a)(2); Salazar–Haro v. INS, 95 F.3d 309, 310 n. 1 (3d Cir.1996), cert. denied, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997).

**6.** The AEDPA does not contain an express effective date. As such, courts have held that

In *Morel I*, the petitioner Morel ("Morel") directly petitioned the Court of Appeals for a review of a decision of the BIA which declared him ineligible for a waiver pursuant to Section 212(c). This Circuit granted the petition, holding the BIA erred in determining Morel was ineligible for a waiver under Section 212(c). *See Morel I*, 90 F.3d at 842.

Morel was arrested in August 1991 and charged with possession of a controlled dangerous substance and possession of a controlled dangerous substance within 1,000 feet of a school. Morel subsequently pleaded guilty to the first possession charge, rendering him deportable pursuant to Section 1227(a)(2)(B)(i). The court concluded, *inter alia*, Morel nevertheless was eligible for a waiver of inadmissibility un-der Section 212(c). *See id.* at 840, 842. The decision in *Morel I*, rendered on 26 July 1996, omitted mention of Section 440 of AEDPA.

Upon subsequent consideration of Section 440(a) of the AEDPA,[7] however, the Third Circuit vacated its opinion in *Morel I. See Morel v. INS*, 144 F.3d 248 (3d Cir.1998) ("*Morel II* "). In so doing, the court explained:

> The INS now argues that the [AEDPA] applies here to foreclose our ability to entertain this petition and grant the relief Morel requests. Because we agree, we now vacate our original opinion. Consequently, the decision of the BIA affirming the immigration judge's denial of the applicability of § 212(c) to Morel

the effective date is 24 April 1996, the day the President signed the bill into law. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998); *see also Kolster v. INS*, 101 F.3d 785, 788 (1st Cir.1996); *Hatch v. Oklahoma*, 92 F.3d 1012, 1014 n. 2 (10th Cir.1996); *Qasguargis v. INS*, 91 F.3d 788, 789 (6th Cir.1996) (order), *cert. denied*, 519 U.S. 1148, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Duldulao v. INS*, 90 F.3d 396, 398 n. 2 (9th Cir.1996).

7. § 440(a) ("Section 440(a)") of the AEDPA, codified at 8 U.S.C. § 1105a(a)(10), provides for judicial review of all final orders of deportation. Section 440(a) amends § 106(a) of the INA ("Section 106(a)"), as amended, 8 U.S.C. § 1105a(a)(10), by removing judicial review of final orders of deportation for aliens convicted of certain criminal offenses. Section 106(a) formerly read: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10); *see Morel II*, 144 F.3d at 251 n. 4.

AEDPA § 440(a) supplants Section 106(a) as follows:

> Any final order of deportation against an alien who is *deportable by reason of having committed a criminal offense* covered in section [1227](a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section [1227](a)(2)(A)(ii) of this title for which both predicate offenses are covered by section [1227](a)(2)(A)(i) of this title, *shall not be subject to review by any court.*

§ 440(a), 110 Stat. At 1276–77 (codified at 8 U.S.C. § 1105a(a)(10)) (emphasis added).

The IIRIRA repealed Section 106 of the INA, 8 U.S.C. § 1105a (1994), replacing it with a more restrictive statute governing judicial review. *See* 8 U.S.C. § 1252(g). It appears, however, the changes effected by the IIRIRA do not apply to the instant action. As previously mentioned, § 309 ("Section 309") of the IIRIRA contains transitional rules applicable to cases in which the final order of deportation is entered before the general effective date of the IIRIRA, 1 April 1997, but more than thirty days following the passage of the IIRIRA, on 30 September 1996. *See* IIRIRA § 309(c), 110 Stat. 3009–546. The transitional rules of the IIRIRA, applicable here, carry forward the jurisdictional bar of deportation orders against aliens convicted of certain crimes, including controlled substance violations for which the Petitioner was convicted. *See* IIRIRA § 309(c)(4)(G), 110 Stat. 3009–546 (setting forth transitional rules which provide, *inter alia*, "there shall be no appeal of any discretionary decision under ®27 [S]ection 212(c)" and "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable ·by reason of having committed a criminal offense covered in [S]ection 241(a)(2)(A)(iii), (B), (C), or (D)...."); *see also Berehe v. INS*, 114 F.3d 159, 161 (10th Cir.1997); *Jorge v. Hart*, No. 97–CV–1119, 1997 WL 531309, at *3 (S.D.N.Y. 28 Aug. 1997). The transitional provisions of Section 309 of the IIRIRA are "nearly identical to § 440(a) of the AEDPA." *Turkhan v. INS*, 123 F.3d 487, 490 (7th Cir. 1997). Accordingly, for purposes of the opinion, Section 440(a) is deemed to incorporate the technical changes of the IIRIRA.

from which appeal was taken to this Court, is final.

*Morel II*, 144 F.3d at 250.

The Circuit held that because Morel was convicted of a deportable criminal offense, Section 440(a) of the AEDPA divested it of jurisdiction to review his claim of legal error in the deportation proceedings. The court observed Morel did not dispute he was convicted of a deportable criminal offense covered in § 241(a)(2)(B)(i) of the INA, 8 U.S.C. § 1251(a)(2)(B)(i). *See id.* at 251. The court concluded: "AEDPA § 440(a) denies Morel the right to obtain review by an Article III court." *Id.*

Other Circuits have held Section 440(a) eliminates their authority to conduct direct review of deportation proceedings for the defined class of criminal aliens, which they previously exercised under Section 106 of the INA, 8 U.S.C. § 1105a(a). *See, e.g., Williams v. INS*, 114 F.3d 82, 83 (5th Cir.1997); *Yang v. INS*, 109 F.3d 1185, 1194–97 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997); *Boston–Bollers v. INS*, 106 F.3d 352, 355 (11th Cir.1997); *Kolster*, 101 F.3d

at 790–91 (1st Cir.); *Hincapie–Nieto v. INS*, 92 F.3d 27, 30–31 (2d Cir.1996).

In light of Section 440(a) of the AEDPA, Federal courts do not retain jurisdiction over direct petitions of claims of legal error in deportation proceedings involving aliens of certain criminal offenses. *See Morel II*, 144 F.3d at 251 (citing *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) and *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)) (observing "relevant Supreme Court authority does not mandate judicial review by an Article III court of questions of law underlying legislatively-created public rights such as immigration"). *Morel II* left open the question, however, of whether Section 440(a) also revokes Federal jurisdiction over habeas corpus petitions.

b. *Collateral Review of Deportation Proceedings*

Then asserts Federal jurisdiction exists over the Petition pursuant to Section 2241[8] and the "Suspension Clause" of the United States Constitution.[9] *See* Petition at ¶ 3.

---

**8.** Section 2241, entitled "Power to grant a writ," provides, in relevant part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He [or she] is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He [or she] is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He [or she], being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; ....

28 U.S.C. § 2241. The custody requirement limits this "extraordinary remedy" to cases of special urgency involving "severe restraints on individual liberty." *See Hensley v. Munici-*

*pal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Macias v. Greene*, 28 F.Supp.2d 635 at 637–38 (D.Colo. 1998). The custodian of a habeas petitioner is the proper respondent to a habeas action. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). A lawful permanent resident of the United States who is subject to a final order of deportation but not yet deported satisfies the "in custody" requirement of Section 2241(c)(1). *See Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995); *Galaviz–Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir.1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *Thompson v. Perryman*, 1998 WL 473471, at *3 (N.D.Ill.1998) (slip op.); *Macias*, 28 F.Supp.2d 635 at 638.

As mentioned, Then is presently a detainee of the Detention Center of the INS. Additionally, he is subject to the Final Order of Deportation. Accordingly, Then satisfies the "in custody" requirement of Section 2241.

**9.** The "Suspension Clause" states: "[T]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of

Section 440(a) of the INA, 8 U.S.C. § 1105a(a)(10) (repealed and redesignated at 8 U.S.C. § 1252), does not expressly address the retention of Federal jurisdiction for habeas relief for constitutional violations. As a result, a question arises whether Federal District Courts retain statutory jurisdiction under Section 2241, or constitutional jurisdiction under the Suspension Clause, to review habeas petitions of aliens convicted of the defined criminal offenses.

A few Circuit courts which have addressed the issue have concluded the District Courts retain jurisdiction under both Section 2241 and the Suspension Clause, notwithstanding the expansive language of Section 440(a) precluding judicial review of final orders of deportation. *See Henderson v. INS,* 157 F.3d 106, 120 (2d Cir.1998); *Goncalves v. Reno,* 144 F.3d 110, 120 (1st Cir.1998).

Several District Courts similarly have acknowledged the existence of statutory and constitutional jurisdiction to review habeas petitions of aliens who were barred from seeking direct review of deportation orders by Section 440(a). *See, e.g., Lee v. Reno,* 15 F.Supp.2d 26 (D.D.C.1998); *Almon v. Reno,* 13 F.Supp.2d 143 (D.Mass. 1998); *Avelar Cruz,* 6 F.Supp.2d at 750; *Gutierrez–Martinez v. Reno,* 989 F.Supp. 1205 (N.D.Ga.1998); *Jurado–Gutierrez v. Greene,* 977 F.Supp. 1089 (D.Colo.1997); *Mojica,* 970 F.Supp. 130; *Vargas v. Reno,* 966 F.Supp. 1537 (S.D.Cal.1997); *Powell v. Jennifer,* 937 F.Supp. 1245 (E.D.Mich. 1996).

Several of these courts rely upon the "clear statement rule" articulated by the Supreme Court in *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868) and *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct.

2333, 135 L.Ed.2d 827 (1996) as justification for their determination that habeas relief remains available after the AEDPA and the IIRIRA amendments to the INA.[10] These courts conclude because the AEDPA and the IIRIRA do not expressly mention, amend or repeal Section 2241, Congress did not speak clearly enough to repeal habeas jurisdiction. *See Goncalves,* 144 F.3d at 120; *Macias,* 28 F.Supp.2d 635 at 636; *Lee v. Reno,* 15 F.Supp.2d 26, 32 (D.D.C.1998); *Avelar Cruz,* 6 F.Supp.2d at 750; *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997).

Still other courts have determined Section 440(a), as amended by the IIRIRA, abolishes habeas review entirely. *See Hose v. INS,* 141 F.3d 932, 935 (9th Cir. 1998) (holding District Courts retain no habeas jurisdiction under Section 2241 or the Suspension Clause); *Auguste v. Reno,* 118 F.3d 723, 725–26 (11th Cir.1997) (holding Congress can constitutionally remove all judicial review of final orders of deportation because regulation of aliens is committed to the executive and legislative branches alone); *Abbate v. Reno,* No. 98–CV–1496, 1998 WL 195653, at * 1–2 (E.D.Pa.30 Mar.1998) (holding AEDPA divests court of jurisdiction to review habeas petition seeking relief from final deportation order); *Marriott v. Ingham,* 990 F.Supp. 209, 212 (W.D.N.Y.1998) (refusing to recognize habeas jurisdiction where alien seeks relief from final order of deportation); *Mayers v. Reno,* 977 F.Supp. 1457, 1461 (S.D.Fla.1997) ("[A]liens are not constitutionally guaranteed the right to habeas corpus as a vehicle for challenging orders of deportation."); *cf. Hincapie–Nieto,* 92 F.3d at 31 (holding Congress could constitutionally remove habeas jurisdiction over direct challenges to deportation orders, leaving only jurisdiction to hear

Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1, § 9, cl. 2.

**10.** In *Yerger* and later in *Felker,* the Supreme Court construed statutes which narrowed the jurisdiction of the Supreme Court to hear habeas cases. In both cases, the Court concluded that Congress had not repealed its

jurisdiction to hear habeas petitions under Section 2241. In so holding, the Court stated Congress must explicitly state its intention to repeal or restrict habeas jurisdiction under Section 2241 if it intends to do so. *See Felker,* 518 U.S. at 661, 116 S.Ct. 2333.

claims relating to matters collateral to deportation orders).

A few courts assume a middle ground, distinguishing statutory habeas jurisdiction pursuant to Section 2241 from constitutional habeas jurisdiction under the Suspension Clause. These courts hold Section 440(a) repeals all Federal jurisdiction over deportation orders of the defined of class of criminal aliens where jurisdiction is predicated upon Section 2241, but not where jurisdiction is founded upon constitutional grounds. *See, e.g., Yang,* 109 F.3d at 1195 (referring to the "constitutional writ, unaided by statute"); *Macias,* 28 F.Supp.2d 635 at 636; *Olvera v. Reno,* 20 F.Supp.2d 1062 (S.D.Tex.1998); *Rusu v. Reno,* 999 F.Supp. 1204, 1210 (N.D.Ill. 1998); *cf. Williams,* 114 F.3d at 84 (internal quotations omitted) (observing a "limited opportunity to apply for a writ of habeas corpus may remain—at a minimum the writ that Art. 1 § 9, cl. 2 preserves against suspension").

This Circuit and District Courts in this Circuit have held more generally that aliens subject to deportation for certain criminal offenses may still seek judicial review of serious constitutional errors. *See Salazar–Haro,* 95 F.3d at 311 (citing *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)) ("To the extent … that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute."); *Morel II,* 144 F.3d at 251 (courts retain constitutional habeas jurisdiction in situations involving "serious constitutional error"); *Zisimopoulos v. Reno,* No. 98–1863, 1998 WL 437266, at *2 (E.D.Pa.15 July 1998) (habeas petition granted where petitioner was to be deported before criminal trial; habeas petition raised claim of "serious constitutional violations" because deportation would deprive petitioner of right to be witness on his own behalf).

■ In light of the foregoing caselaw, it appears notwithstanding the curtailment of Federal jurisdiction in immigration cases by the AEDPA and the IIRIRA, Federal jurisdiction remains available to review certain habeas petitions, at least under the "Suspension Clause" of the Constitution. *See Williams,* 114 F.3d at 84; *Yang,* 109 F.3d at 1195; *see also Felker,* 518 U.S. at 661, 116 S.Ct. 2333 (requiring explicit statement from Congress to repeal or restrict habeas jurisdiction).

It appears, however, while Section 440(a) probably does not repeal Federal jurisdiction to hear certain habeas petitions of criminal aliens under § 2241, Federal review of such petitions is limited in scope to claims involving core constitutional concerns. *See Morel II,* 144 F.3d at 251; *Salazar–Haro,* 95 F.3d at 311; *see also Henderson,* 157 F.3d at 120 (jurisdiction retained where habeas petitioner alleges substantial constitutional violations); *Fernandez v. INS,* 113 F.3d at 1154 n. 3 (10th Cir.1997) (recognizing possibility that BIA decisions subject to habeas review for "substantial constitutional errors"); *Hincapie–Nieto,* 92 F.3d at 31; *Kolster,* 101 F.3d at 791; *Macias,* 28 F.Supp.2d 635 at 636 (District Courts retain habeas jurisdiction to address "substantial constitutional claims"); *Eltayeb v. Ingham,* 950 F.Supp. 95, 100 (S.D.N.Y.1997); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996); *cf. Olvera,* 20 F.Supp.2d at 1065; *but see Mojica,* 970 F.Supp. 130.

In this connection, this Circuit has held the mere deprivation resulting from a retroactive application of Section 440(a) of the AEDPA to Section 212(c) is not of constitutional proportions. *See Morel II,* 144 F.3d at 251.

As explained below, the Petition does not contain claims of substantial constitutional error. The Petitioner has not sufficiently demonstrated the existence of subject matter jurisdiction or whether, if jurisdiction ultimately is found to exist, he will prevail on the merits. Consequently, the Preliminary Injunction Application is denied.

### 2. Alleged Constitutional Violations

#### a. Retroactivity Concerns

##### (1) Section 440(d)

At the time of the effective date of the AEDPA on 24 April 1996, the Guilty Plea and the Judgment of Conviction against Then already had been entered. *See* Judgment of Conviction (noting the Petitioner pleaded guilty on 15 March 1996 and Judgment of Conviction was entered on 30 June 1995). It appears, however, deportation proceedings were commenced subsequent to the effective date of the AEDPA. *See* Then Aff. at ¶¶ 5, 6. Then first appeared before the Immigration Judge on 29 October 1996, and presumably filed his 212(c) Application soon thereafter. *See id.* at ¶ 6. Then alleges the AEDPA, presumably § 440(d), was impermissibly retroactive to Then, whose "crime [was] committed October 26, 1993, at least 2 years before the creation of the [AEDPA]." *See* Petition at ¶ 2.

In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) the Supreme Court reaffirmed the presumption against statutory retroactivity. The Court established a two-prong test in determining whether a statute applies retroactively. First, it must be determined whether "Congress has expressly prescribed the statute's proper reach." *Id.* at 269–70, 114 S.Ct. 1483. Second, in the absence of express specification of the temporal reach of a statute, consideration is given to "whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 268, 114 S.Ct. 1483.

The AEDPA does not provide an express provision governing the temporal reach of Section 440(d). *See* AEDPA § 440(d), 110 Stat. 1214, 1217; *see also Lee*, 15 F.Supp.2d at 44; *Avelar Cruz*, 6 F.Supp.2d at 752. As such, it is necessary to address the second prong of the *Landgraf* analysis and determine whether the AEDPA retroactively impairs the rights of the Petitioner.

In *Matter of Soriano*, Int. Dec. 3289 (A.G.Slip.Op. 21 Feb. 1997), the Attorney General opined that Section 440(d) applies to pending immigration cases because it "does not impair a right, increase a liability, or impose new duties on criminal aliens." *Id.* at 4. In concluding Section 440(d) is not impermissibly retroactive, the Attorney General reasoned the relief sought in waiver applications under Section 212(c) is prospective in nature. *Id.* at 5; *see also Avelar Cruz*, 6 F.Supp.2d at 753 (citing and adopting *Soriano* in holding Section 440(d) not retroactive to pending cases).

This Circuit, though not interpreting Section 440(d), similarly has observed the prospective nature of relief pursuant to Section 212(c). In *Scheidemann v. INS*, 83 F.3d 1517 (1996), the Third Circuit held a new provision of the INA which similarly rendered a class of felons ineligible for Section 212(c) relief was not retroactive in application to convictions predating the enactment of the statute. The Circuit stated:

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief from one of those consequences ... [T]his change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his [or her] presence in the United States.... [T]hese changes speak only to the power of a public agency.... Given the facts that petitioner's ... conduct clearly subjected him to deportation as well as criminal sanc-

tions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not contend that his conduct was undertaken in reliance on the then current version of § 212(c).

*Id.* at 1523.

Certain courts, however, applying the principles in *Landgraf,* have concluded Section 440(d) does not apply retroactively to bar applications for Section 212(c) relief pending at the time of enactment of the AEDPA, on 24 April 1996. *See, e.g., Goncalves,* 144 F.3d at 112, 126.

■ In the instant case, by contrast, the deportation proceedings, commenced upon the release of Then from prison on or about August 1996, were initiated well after the enactment of the AEDPA. *See* Then Aff. at ¶¶ 5, 6. Presumably, although the exact date is unclear from the record, the Petitioner did not file his 212(c) Application before his initial appearance before the Immigration Judge, on 29 October 1996. *See id.* at ¶ 6. The non-retroactivity concerns expressed in *Landgraf* are not present here. *See Olvera,* 20 F.Supp.2d at 1066 n. 10 (stating "issue [of non-retroactivity] does not arise in this case because [petitioner's] deportation proceedings began after the AEDPA was enacted"); *Almon v. Reno,* 13 F.Supp.2d 143, 144 n. 1 (D.Mass.1998) (distinguishing *Goncalves* on the ground that 212(c) application of petitioner was not pending when AEDPA was enacted); *see also Lee,* 15 F.Supp.2d at 44 n. 26 (recognizing non-retroactivity of Section 440(d) applicably solely to cases in which 212(c) applications pending at time of enactment of AEDPA).

Other District Courts, however, have extended the presumption against retroactivity to guilty pleas entered before the enactment of the AEDPA. *See Wallace v. Reno,* 24 F.Supp.2d 104, at 111–12 (D.Mass.1998); *Sandoval v. Reno,* No. 97–7298, 1997 WL 839465, at * 10–11 (E.D.Pa.30 Dec.1997) (stating retroactive operation of Section 440(d) would upset

settled expectations which form the basis for guilty pleas entered by criminal aliens). The retroactivity analysis of these courts has, however, come under attack:

> While it is undeniable that immigration consequences may be a factor in a decision to plead guilty, this court is not convinced by *Sandoval* ... that the availability of discretionary relief under § 212(c) is the sole or even a significant motivating factor in decisions to enter guilty pleas. It is a stretch to assume a criminal defendant would forego a viable defense in order to enter a guilty plea to a crime that makes him subject to automatic deportation, simply for the opportunity to apply for discretionary relief.... The presumption against retroactivity ... affords no guarantee against upset expectations based in prior law... Rather, the question is whether § 440 attaches new legal consequences to ... criminal convictions.... [T]his court answers that question in the negative.

*Avelar Cruz,* 6 F.Supp.2d at 754; *see also Scheidemann,* 83 F.3d at 1523 (where criminal conduct subjected petitioner to deportation as well as criminal sanctions, petitioner "could not contend that his conduct was undertaken in reliance on the then current version of § 212(c)").

Accordingly, that the expectations of Then in entering into the guilty plea may have been subsequently upset by the changes in law is insufficient grounds to preclude the application of Section 440(d) to him. The consequences of the criminal conduct of Then were apparent at the time of the conduct and remain unchanged. *See Scheidemann,* 83 F.3d at 1523.

In this regard, relief under Section 212(c) is prospective in nature; nothing in the express language of Section 440(d) impairs any rights the Petitioner had when he committed the drug offenses for which he was convicted. "While at that time [the Petitioner] could have applied for relief from automatic deportation, he could not

have claimed a settled expectation in the ultimate granting of discretionary relief." *Avelar Cruz*, 6 F.Supp.2d at 753. Section 440 merely narrowed the prospective discretion of the Attorney General to grant relief. *See Scheidemann*, 83 F.3d at 1523 ("The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief...."); *Avelar Cruz*, 6 F.Supp.2d at 753 (" § 440(d) simply scaled back the Attorney General's prospective discretion to grant a particular form of relief."); *Soriano*, Int. Dec. 3289 at 5. The claim of the Petitioner that his due process rights were violated by the retroactive application of Section 440(d) accordingly is dismissed.

#### (2) *Section 440(a)*

It further appears Section 440(a) is not impermissibly retroactive against the Petitioner to bar habeas review of his claims. This Circuit, in *Morel II*, was not concerned by the retroactive effect of Section 440(a) to Morel. The Morel guilty plea was entered before the effective date of the AEDPA; the Morel petition for review was pending when the AEDPA was enacted. The court stated: "The question of whether AEDPA § 440(a) applies retroactively has already been settled in this Circuit." *Id.* (citing *Salazar–Haro v. INS*, 95 F.3d 309 (3d Cir.1996), *cert. denied*, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997)).

In *Salazar–Haro*, the Circuit held Section 440(a) applies to petitions for review pending when the AEDPA was enacted. The court was guided by the retroactivity analysis explicated by the Supreme Court in *Landgraf*. It observed: " '[the Supreme Court] ha[s] regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed.' " *Salazar–Haro*, 95 F.3d at 310 (quoting *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483). The court reasoned:

[U]nlike situations where retroactivity would affect pre-existing rights, withdrawal of jurisdiction, although realistically disrupting settled expectations, does not preserve pending litigation.

. . . . .

We hold, therefore, that the amendment to 8 U.S.C. § 1105a(a)(10) became effective on the day of enactment [of the AEDPA], April 24, 1996.

*Salazar–Haro*, 95 F.3d at 311; *see also Avelar Cruz v. Reno*, No. 98–1193, 6 F.Supp.2d 744, 754 (N.D.Ill.1998) (holding Section 440 not impermissibly retroactive as applied to both pending applications for relief and criminal convictions which predate the enactment of the AEDPA).

Accordingly, it appears any deprivation resulting from a retroactive application of Section 440 of the AEDPA to bar relief pursuant to Section 212(c) is not of constitutional proportions. *See Morel II*, 144 F.3d at 251; *Avelar Cruz*, 6 F.Supp.2d at 753.

#### b. *Ineffective Assistance of Counsel*

The Petitioner also appears to allege he was denied effective assistance of counsel because Vega admitted the charges lodged against the Petitioner at the 7 March 1997 Deportation Proceedings without his permission, and then failed to timely file the Appeal to the BIA. *See* Petition at ¶ 3; Then Aff. at ¶¶ 7, 8, 10.

A claim of ineffective assistance of counsel in a deportation proceeding is based on the Fifth Amendment guarantee of due process. *See Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993) (deportation proceedings are civil in nature; they do not give rise to a Sixth Amendment right to counsel); *Michelson v. INS*, 897 F.2d 465, 467 (10th Cir.1990); *Lozada v. INS*, 857 F.2d 10, 13 (1st Cir.1988); *Magallanes–Damian v. INS*, 783 F.2d 931, 933 (9th Cir.1986). An alien may have a viable claim of ineffective assistance of counsel where counsel is "so ineffective as to have impinged upon the fundamental fairness of the [deportation proceedings] in

violation of the fifth amendment due process clause." *Castaneda–Suarez*, 993 F.2d at 144 (quoting *Magallanes–Damian*, 783 F.2d at 933); *see Saleh v. United States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir.1992); *Figeroa v. INS*, 886 F.2d 76, 78 (4th Cir.1989); *Lozada*, 857 F.2d at 13. In this regard, "the Fifth Amendment, like the Sixth Amendment, is not automatically violated by serious attorney errors." *Motta v. INS*, 869 F.Supp. 80, 88–89 (D.Mass. 1994) (citing *Scarpa v. DuBois*, 38 F.3d 1 (1st Cir.1994)).

■■■ "To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show not only ineffective representation, but also prejudice to him [or her] which occurred as a result of that ineffectiveness." *Figeroa*, 886 F.2d at 78 (citing *Ramirez–Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986)); *Szilagyi v. INS*, 131 F.3d 148 (slip op.). An alien has been prejudiced if, but for the ineffectiveness of counsel, the outcome of the deportation proceedings may have been different. *See Barraza Rivera v. INS*, 913 F.2d 1443, 1448 (9th Cir.1990). Where counsel for an alien fails to file a timely appeal, however, such failure may constitute ineffective assistance of counsel regardless of the likelihood of success on the merits. *See United States v. Peak*, 992 F.2d 39, 42 (4th Cir.1993); *but see Prado–Rodriguez v. I.N.S.*, 51 F.3d 282 (9th Cir. 1995) (slip op.) ("The loss of appellate review of the BIA's determination is not, in and of itself, prejudicial."); *Matter of Lozada*, 19 I & N Dec. 637 (BIA 1988) ("*Matter of Lozada*") (failure of counsel to submit brief on appeal does not in itself amount to deprivation of due process), *aff'd*, 857 F.2d 10 (1st Cir.1988).

Outside of the deportation context, "[a]n attorney's failure to take or perfect an appeal when the defendant has indicated a desire to appeal constitute[s] ineffective assistance of counsel *per se.*" *Sortino*, Civ.A. No. 94–5114, 1994 WL 502373, at *1. In order to prove his or her claim, a petitioner is not required to show that he or she was prejudiced by counsel's failure to appeal or to state which issues he or she would have raised on direct appeal. *See Lozada v. Deeds*, 498 U.S. 430, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (*per curiam*) ("*Lozada*"); *Lozada v. Deeds*, 964 F.2d 956 (9th Cir.1992). Rather, the "failure to take an appeal, despite the [petitioner's] request, is ineffective assistance without regard to the probability of success on appeal." *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir.1994). The petitioner, however, must have requested his or her counsel to appeal:

> "Request" is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue.... [T]he Constitution does not require a lawyer to advise the client of the right to appeal. That duty rests principally on the judge—and even if both judge and counsel forget to provide this advice, most defendants know about the possibility of appeal and cannot complain if they are not furnished redundant information. "Counsel will not be found ineffective per se for failure to appeal an appealable judgment." *Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir. 1992) [, *cert. denied*, 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992) ]. Only a failure to appeal a judgment that the defendant desires to appeal is problematic.

*Id.*

In *Lozada*, the petitioner alleged his attorney "failed to inform him of his right to appeal, of the procedures and time limitations for an appeal, and of his right to appointed counsel." *Lozada*, 498 U.S. at 430, 111 S.Ct. 860. Lozada further alleged his attorney "failed to file a notice of appeal or to ensure that Lozada received appointed counsel on appeal." *Id.* Based on these allegations, the Court held Lozada "made a substantial showing that he was denied the right to effective assistance of counsel" and remanded the matter for further proceedings. *Id.* at 432, 111 S.Ct. 860.

In *Castellanos*, the petitioner told his lawyer to appeal, but the lawyer refused,

informing him that one may not appeal from a sentence based on a plea of guilty. *Castellanos,* 26 F.3d at 718. The Seventh Circuit remanded the matter for the determination of "whether Castellanos . . . timely told [his] lawyer[ ] that [he] wanted appellate review." *Id.* at 720.

■ The communication to counsel of a petitioner's desire to appeal also is a prerequisite to viability of ineffective assistance claims in the immigration context. Specifically, in *Matter of Lozada,* 19 I & N Dec. 637, 1988 WL 235454 the BIA announced requirements for motions to reopen or reconsider based upon allegations of ineffective assistance of counsel:

> A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts. In the case before us, the affidavit should include a *statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard.*

*Id.* at 639 (emphasis added); *see Motta,* 869 F.Supp. at 88–89 (analyzing whether agreement between petitioner and counsel was reached for counsel to appeal decision of immigration judge).

■ Irrespective of whether the failure of counsel to effectuate a timely appeal of a decision of an immigration judge is *per se* prejudicial, it appears the actions of Vega do not constitute a fundamental miscarriage of justice in violation of the Fifth Amendment. The instant matter is distinguishable from the above authority. Significantly, there is no allegation the Petitioner requested, or even expressed his desire, that Vega file an appeal.

The Petitioner merely states he was "informed by [Vega] that he'll take care of the [7 March 1997] deportation proceeding while [the Petitioner] returned to [his] family in New Jersey." *See* Then Aff. at ¶ 7. It appears the Petitioner never specifi-

cally requested that Vega file the Appeal, nor, for that matter, did he express a desire to appeal the 7 March 1997 Decision. *See* Petition; Then Aff. Instead, the Petitioner contends Vega, "after appearing in court and knowing the appeal to the March 7, 1997, decision by [the Immigration Judge], required a timely appeal within thirty days, effected my appeal by April 10, 1997." Then Aff. at ¶ 10.

It appears, moreover, Vega believed an appeal lacked merit, in light of the retroactive application of Section 440(d) to the Petitioner. *See* Vega Facsimile. Effective assistance of counsel requires only that counsel respect the desire of the client to file an appeal. *See United States ex rel. O'Brien v. Maroney,* 423 F.2d 865, 868 (3d Cir.1970) ("[T]o insure the effectiveness of such assistance, the appointed trial attorney has been charged with the duty of respecting his [or her] client's desire to file an appeal, even if in his [or her] best professional judgment the appeal is utterly without merit."). However, "[o]nly a failure to appeal a judgment that the defendant desires to appeal is problematic." *Castellanos,* 26 F.3d at 719. As explained, it appears from the Petition and the Then Affidavit that Then did not ask for an appeal. It also appears, as previously discussed, the Appeal would have been denied notwithstanding the failure of Vega to file it in a timely manner, because Section 440(d) would operate to bar his 212(c) Application. Consequently, Vega was not deficient for failing to timely file an appeal which was neither requested nor warranted.

Additionally, it appears the Petitioner was not present at the 7 March 1997 Deportation Proceedings. *See* Then Aff. at ¶ 7. "An alien cannot be heard to complain when, with notice of a deportation hearing, he [or she] voluntarily fails to appear for the hearing, and it is held in his [or her] absence." *Sewak v. INS,* 900 F.2d 667, 672 (3d Cir.1990); *see Reyes–Arias v. INS,* 866 F.2d 500, 504 (D.C.Cir.1989); *United States v. Dekermenjian,* 508 F.2d 812, 814 (9th Cir.1974). The Petitioner concedes he gave Vega permission to handle all mat-

ters relating to his deportation proceedings. *See* Then Aff. at ¶ 7. He cannot now use his ostensible lack of interest in the 7 March 1997 Deportation Proceedings as a means of obtaining a different result.

The Petitioner has not demonstrated prejudice resulting from the failure to Vega to file a timely appeal. The Petitioner accordingly has failed to demonstrate the likelihood he will prevail on the merits of his claim of ineffective assistance of counsel. Because the Petitioner has not established any likelihood of success on the merits, the Preliminary Injunction Application is denied.

The Government is directed to file an answer to the Petition no later than the close of business 15 January 1999; the Petitioner may file a reply by the close of business 29 January 1999.

*Conclusion*

For the reasons discussed, the Preliminary Injunction Application is denied.