**Rodolfo CEBALLOS de LEON, Plaintiff,**

v.

**Janet RENO, Defendant.**

**No. Civ.A. 98–4890(AJL).**

United States District Court, D. New Jersey.

June 29, 1999.

---

Robert Frank, Newark, New Jersey, for petitioner.

Faith Hochberg, United States Attorney, Daniel J. Gibbons, Assistant United States Attorney, Newark, New Jersey, for United States.

Janet Reno, Attorney General, Doris Meissner, Commissioner, Andreas Quarantino, District Director, United States Immigration and Naturalization Service, Newark, New Jersey, respondent.

## OPINION

LECHNER, District Judge.

This is an action brought by petitioner, Rodolfo Ceballos de Leon ("Ceballos"), a

detainee of the Immigration and Naturalization Service (the "INS") in Newark, New Jersey, against respondents, Attorney General Janet Reno, INS Commissioner Doris Meissner, INS District Director Andreas Quarantino, the INS and the Department of Justice (collectively, the "Respondents"). Presently pending is the petition (the "Petition") of Ceballos for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). Also pending is an application for a preliminary injunction (the "Preliminary Injunction Application") enjoining the deportation of Ceballos from the United States and seeking relief from a final order of deportation entered against Ceballos on 5 June 1997 (the "Final Order of Deportation").[1]

For the reasons which follow, the Preliminary Injunction Application is denied; the Petition is dismissed with prejudice.

*Background*

Ceballos is a native and citizen of the Dominican Republic. *See* Petition at ¶ 3; Immigrant Visa and Alien Registration.[2] Ceballos lawfully entered the United States in 1977, and has continuously resided as a permanent resident of the United States. *See* Petition at ¶¶ 3, 8.

On 27 May 1994, a New Jersey State Grand Jury indicted Ceballos in a three-count indictment (the "Indictment"). *See* Judgment of Conviction and Order of Commitment (the "Judgment of Conviction").[3] The first two counts of the Indictment charged Ceballos with possession of a controlled dangerous substance with intent to distribute, in violation of N.J.S.A. 2C:35–10a(1) and 2C:35–5a(1). *See id.* The third count of the Indictment charged Ceballos with possession of a controlled substance with intent to distribute within 1,000 feet of school property, in violation of N.J.S.A. 2C:35–7. *See id.*

On 17 November 1994, Ceballos pleaded guilty to counts two and three of the Indictment. *See id.* He was convicted in the Superior Court of New Jersey, Law Division, Passaic County, on 27 January 1995. *See id.;* Petition at ¶ 9. On the same date, Ceballos was sentenced to a six year prison term, and a minimum parole ineligibility term of two years. *See* Judgment of Conviction.

The conviction rendered Ceballos deportable pursuant to § 241(a)(2)(B)(i) ("Section 241") of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1227(a)(2)(B)(i) (formerly 8 U.S.C. § 1251).[4]

On 12 August 1996, the INS commenced deportation proceedings against Ceballos and ordered him to show cause why he should not be deported pursuant to Section 241 of the INA (the "12 August 1996 Order to Show Cause"). *See* Petition at ¶ 10; Answer at 1; 12 August 1996 Order to

---

1. In support of his requested relief, Ceballos submitted: the Petition, attaching unmarked Exhibits, and the Preliminary Injunction Application. In opposition to the Petition and the Preliminary Injunction Application, the Respondents submitted: an answer (the "Answer"), attaching Exhibits 1 through 7.

2. A copy of the Immigrant Visa and Alien Registration of Ceballos is attached to the Answer as Exhibit 1.

3. A copy of the Judgment of Conviction is attached to the Answer as Exhibit 2.

4. Section 241 provides, in pertinent part:
 (a) *Classes of deportable aliens*
 Any alien.... in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

 \*　\*　\*　\*　\*　\*

 (2) *Criminal Offenses*

 \*　\*　\*　\*　\*　\*

 (B) *Controlled Substances*
 (i) *Conviction*
 Any alien at any time after admission has been convicted of a violation of (or conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
 8 U.S.C. § 1227(a)(2)(B)(i).

Show Cause.[5] On 23 May 1997, Ceballos applied for waiver of deportation (the "212(c) Application") pursuant § 212(c) ("Section 212(c)") of the INA, 8 U.S.C. § 1182(c).[6] *See* Answer at 1; Petition at ¶ 11.

In an oral decision, dated 5 June 1997, ("5 June 1997 Decision"), Immigration Judge Daniel Meissner (the "Immigration Judge") deemed Ceballos statutorily ineligible to apply for Section 212(c) relief and denied his 212(c) Application. *See* 5 June 1997 Decision.[7] The Immigration Judge observed:

> [Ceballos] is precluded from being granted a waiver under Section 212(c) in light of his aggravated felony conviction in spite of the very obvious and apparent equities of the fact that he is married, in the United States, and has two United States citizen daughters, and a United States citizen mother.... [U]nder the Immigration an Nationality Act, including amendments, I cannot consider [Ce-

**5.** A Copy of the 12 August 1996 Order to Show Cause is attached to the Answer as Exhibit 3. It provides, in relevant part:

> You were, on November 17, 1994 convicted in the New Jersey Superior Court, Passaic County for the offense of Possession of controlled dangerous substance (Cocaine) with intent to distribute within 1,000 feet of school zone in violation of NJS 1C:35–5(a)(1); 2C:35–7[.]

12 August 1996 Order to Show Cause.

**6.** Before recent amendments to Section 212(c) and its eventual repeal, as more fully discussed below, Section 212(c) authorized the Attorney General to waive deportation or exclusion for aliens subject to final orders of deportation or exclusion who have had "lawful unrelinquished domicile" for seven consecutive years. Section 212(c) provided, in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful relinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....

8 U.S.C. § 1182(c) (1994 ed.).

While Section 212(c) appeared on its face to apply only to aliens who seek to re-enter the country, it has been extended to apply to deportation proceedings as well. *See Catney*

ballos'] equities and weigh them against the adverse factors of record. No matter how strong [his] equities might be.

*Id.*

It appears the Immigration Judge based his decision upon § 440(d) ("Section 440(d)") of the Anti–Terrorist and Effective Death Penalty Act of 1996, Pub.L. No. 104–32, 110 Stat. 1214 (24 April 1996) (the "AEDPA"). *See id.;* Petition at ¶ 12. Section 440(d) added the following language to Section 212(c):

> [Section 212(c) ] shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in Section 241(a)(2)(A)(iii) [aggravated felony], (B) [controlled substance offenses], (C) [firearms offenses], or (D) [offenses against national security].....

AEDPA § 440(d), 110 Stat. 1214, 1217.[8] Because the Judgment of Conviction of

*v. INS*, 178 F.3d at 192 (3d Cir.1999); *Morel v. INS*, 90 F.3d 833, 837 (3d Cir.) ("*Morel I* "), *vacated on other grounds*, 144 F.3d 248 (3d Cir.1998); *Katsis v. INS*, 997 F.2d 1067, 1070 (3d Cir.), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93; *Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976); *Matter of Silva*, Int.Dec. 2532 (BIA 1976) (adopting *Francis* nationwide). Ceballos, as mentioned, entered the United States in 1977; it appears he has obtained more than seven years of lawful domicile. *See* Petition at ¶¶ 3, 8.

**7.** A copy of the 5 June 1997 Decision of the Immigration Judge is attached to the Answer as Exhibit 4.

**8.** Section 440 of the AEDPA was amended by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, Div. C., § 309(c), 110 Stat. 3009, 626–27 (30 September 1996). The IIRIRA repealed Section 212(c), U.S.C. § 1182(c). The repeal of Section 212(c), as previously amended by Section 440(d), does not affect cases commenced before the effective date of the IIRIRA (1 April 1997), in which a final order of deportation was filed after its enactment date (30 October 1996). *See Catney*, 178 F.3d at 192; *see also Hall v. INS*, 167 F.3d 852, 855 n. 3 (4th Cir.1999). In such cases, transitional rules of the IIRIRA apply. The transitional rules of the IIRIRA

Ceballos fell under Section 241(a), the Immigration Judge found Ceballos statutorily ineligible for a Section 212(c) waiver.

It is unclear from the record whether Ceballos was represented by counsel during the deportation proceedings before the Immigration Judge. It appears, however, Ceballos was represented by Harlan G. York, Esq., ("York") on appeal to the Board of Immigration Appeals (the "BIA") following the entry of the Final Order of Deportation on 5 June 1997. *See* 26 May 1998 BIA Decision (the "26 May 1998 BIA Decision").[9]

On 26 May 1998, the BIA affirmed the Final Order of Deportation and dismissed the appeal filed by York on behalf of Ceballos. *See id.* The BIA observed Ceballos was statutorily ineligible to apply for Section 212(c) relief by reason of having committed a criminal offense covered by Section 241(a)(2). *See id.* (citing AEDPA § 440(d); *Matter of Soriano*, Int.Dec. 3289 (A.G. 21 Feb. 1997)). The BIA also declined to address the constitutionality of the AEDPA and IIRIRA, as urged by Ceballos. *See id.*

Ceballos appealed the 26 May 1998 BIA Decision to the Third Circuit. The Respondents thereafter moved to dismiss the appeal for lack of jurisdiction. By order dated 16 July 1998, (the "16 July 1998 Order") the Circuit dismissed the appeal for lack of jurisdiction. *See Rodolfo Ceballos de Leon v. INS*, No. 98–6130 (3d Cir. 16 July 1998).[10]

Ceballos is presently subject to an Order of Supervision because the INS had insufficient detention space to care for Ceballos, who has suffered a brain injury.[11] *See* Order of Supervision (the "Order of Supervision").[12]

The instant Petition alleges, *inter alia:*

14. Section 440(d) does not apply to Mr. Ceballos' case for two reasons. First, the Attorney General erred in holding that Sec[tion] 440(d) applies to aliens who were in immigration proceedings before the AEDPA's passage. The Attorney General's decision in *Matter of Soriano* conflicts with congressional intent and violates the longstanding presumption against retroactivity.

15. Moreover, even if Sec[tion] 440(d) applies retroactively, it must be invalidated on equal protection grounds. The courts have uniformly held that Congress may not preclude 212(c) relief for

"differ[] only trivially from that of AEDPA § 440(d)...." *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir.1997); *see Catney*, 178 F.3d at 192; *Hall*, 167 F.3d at 855 n. 3; *Turkhan v. INS*, 123 F.3d 487, 490 (7th Cir.1997) *Matter of Fuentes–Campos*, Int.Dec. 3318, 1997 WL 269368 (BIA 14 May 1997).

In this case, the INS commenced deportation proceedings in August 1996. The Final Order of Deportation was not entered until 5 June 1997. The transitional rules of the IIRIRA therefore govern the instant action. *See Catney*, 178 F.3d at 192. Because the restructuring language of the IIRIRA does not affect the outcome of this case, for purposes of this opinion, Section 440(d) of the AEDPA is deemed to include the transitional amendments of the IIRIRA.

9. A copy of the 26 May 1998 BIA Decision is attached to the Answer as Exhibit 5 and to the Petition as an unmarked Exhibit.

10. A copy of the 16 July 1998 Order is attached to the Answer as Exhibit 6 and to the Petition as an unmarked Exhibit.

11. Ceballos alleges he has been hospitalized since 8 September 1998. *See* Petition at ¶ 27. He also submits a letter, dated 13 October 1998, from his physician, S. Nalamachu, M.D. (the "13 October 1998 Letter"). It provides, in pertinent part:

> [Ceballos] is undergoing rehabilitation as the result of a fall from a ladder while at work on 9/8/98. He sustained damage to the frontal lobes of the brain.... His treatment team have [sic] adamantly recommended that he go to a follow up injury unit to complete his rehabilitation. His cognitive limitations make it difficult for him to manage stress and function in the community.... We believe stopping his treatment now would be detrimental to him.

13 October 1998 Letter, a copy of which is attached to the Petition as an Exhibit.

12. A copy of the Order of Supervision is attached to the Answer as Exhibit 8.

an alien inside the United States who is facing deportation (a "deportable" alien), while irrationally permitting the identically-situated alien to apply for such relief if he takes a brief trip abroad and is placed in exclusion proceedings upon seeking re-entry into the country (an "excludable" alien). Yet that is precisely the distinction AEDPA draws because Section 440(d) applies by its terms only to "deportable" aliens.

Petition at ¶¶ 14–15. Ceballos further argues habeas jurisdiction remains available to review his Petition, notwithstanding the enactment of Section 440(a) of the AEDPA ("Section 440(a)"). *Id.* at ¶¶ 16–17.

In support of the Preliminary Injunction Application, Ceballos argues:

26. Mr. Ceballos will be irreparably harmed if he is deported while this petition and complaint are pending before this court because he will have been denied all opportunity for judicial review and will be deported based on an administrative decision that is inconsistent with the INA and Constitution.

27. Mr. Ceballos will be irreparably harmed if the INS takes him into custody while a decision is made in this matter. He has been hospitalized since September 8, 1998. He has a brain injury that is detailed in a letter by his doctors. If he is incarcerated by the INS, he will be unable to receive medical treatment.

*Id.* at ¶¶ 26–27.

### Discussion

#### A. Subject Matter Jurisdiction

■ As a threshold matter, it must be determined whether subject matter jurisdiction exists over the Petition and Preliminary Injunction Application. Ceballos alleges he is entitled to review of the Final Order of Deportation as a matter of statutory and constitutional right. *See* Petition at ¶¶ 18–21.

The Petition observes that in *Morel v. INS*, 144 F.3d 248 (3d Cir.1998) ("*Morel II* "), the Circuit held that Section 440(a) of the AEDPA divested it of jurisdiction to review the direct appeal by an alien of a BIA decision which had affirmed a final order of deportation. *Id.* at 250; *see* Petition at ¶ 17.[13] The *Morel II* court declined

---

**13.** Section 440(a) of the AEDPA, codified at 8 U.S.C. § 1105a(a)(10), provides for judicial review of all final orders of deportation. Section 440(a) amends § 106(a) of the INA ("Section 106(a)"), as amended, 8 U.S.C. § 1105a(a)(10), by removing judicial review of final orders of deportation for aliens convicted of certain criminal offenses. Section 106(a) formerly read: "Any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105(a)(10); *see Morel II*, 144 F.3d at 251 n. 4.

The AEDPA § 440(a) supplants Section 106(a) as follows:

Any final order of deportation against an alien who is *deportable by reason of having committed a criminal offense* covered in section [1227](a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section [1227](a)(2)(A)(ii) of this title for which both predicate offenses are covered by section [1227](a)(2)(A)(i) of this title, *shall not be subject to review by any court.*

AEDPA § 440(a), 110 Stat. at 1276–77 (codified at 8 U.S.C. § 1105a(a)(10)) (emphasis added).

The IIRIRA ultimately repealed Section 106 of the INA, 8 U.S.C. § 1105a (1994), replacing it with a more restrictive statute governing judicial review. *See* 8 U.S.C. § 1252(g). As noted, however, the changes effected by the IIRIRA do not apply to the instant action. The transitional rules of the IIRIRA, applicable here, carry forward the jurisdictional bar of deportation orders against aliens convicted of certain crimes, including controlled substance violations for which the Petitioner was convicted. *See* IIRIRA § 309(c)(4)(G), 110 Stat. 3009–546 (setting forth transitional rules which provide, *inter alia*, "there shall be no appeal of any discretionary decision under ... [S]ection 212(c)" and "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in ... [S]ection 241(a)(2)(A)(iii), (B), (C), or (D). ..."); *see also Berehe v. INS*, 114 F.3d 159, 161 (10th Cir.1997); *Jorge v. Hart*, No. 97–CIV–1119, 1997 WL 531309, at *3 (S.D.N.Y. 28 Aug. 1997).

to address whether Section 440(a) also precluded Federal jurisdiction over habeas corpus petitions filed pursuant to Section 2241.[14] It observed only that "[Section] 440(a) does not preclude Article III court review of claims of substantial Constitutional error." *Morel II*, 144 F.3d at 251 (citation omitted).

After Ceballos filed the Petition, however, the Circuit rendered its opinion in *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999). In *Sandoval*, the Circuit concluded Federal jurisdiction remained available under Section 2241 to review habeas petitions seeking relief from final orders of deportation. *See id.* at 231–22. The *Sandoval* court reasoned that neither the AEDPA nor the IIRIRA contained a clear statement of Congressional intent to eliminate habeas jurisdiction. *See id.*[15]

14. Section 2241, entitled "Power to grant a writ," provides, in relevant part:

(C) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He [or she] is in custody under or by color of authority of the United States or is committed for trial before some court thereof; or

(2) He [or she] is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He [or she], being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations....

28 U.S.C. § 2241. The "in custody" requirement limits this "extraordinary remedy" to cases of special urgency involving "severe restraints on individual liberty." *See Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). The custodian of a habeas petitioner is the proper respondent to a habeas action. *See Braden v. 30th Judicial Circuit of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). A lawful permanent resident of the United States who is subject to a final order of deportation but not yet deported satisfies the "in custody" requirement of Section 2241(c)(1). *See Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995); *Galaviz–Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir.), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *Thompson v. Perryman*, 1998 WL 473471, at *3 (N.D.Ill.1998) (slip op.).

Ceballos was detained at the INS Detention Center in Newark, New Jersey, but is now under an Order of Supervision because of a brain injury. *See* Order of Supervision. He remains subject to a Final Order of Deportation. Accordingly, Ceballos satisfies the "in custody" requirement of Section 2241.

15. Circuit courts are divided as to whether district courts retained subject matter jurisdiction to hear habeas petitions in light of AEDPA Section 440(a). *See Catney*, 178 F.3d at 193 n. 8 (observing a Circuit split). Several Circuits, including the Third Circuit, have held that Section 440(a) eliminated their authority to review direct appeals by deportable aliens alleging legal errors in deportation proceedings. *See, e.g., Morel II*, 144 F.3d at 251, *Williams v. INS*, 114 F.3d 82, 83 (5th Cir. 1997); *Yang v. INS*, 109 F.3d 1185, 1194–97 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).

The elimination of direct review notwithstanding, several Circuits nevertheless determined Federal district courts retain statutory or constitutional jurisdiction to review habeas petitions by deportable aliens pursuant to Section 2241 or under the Suspension Clause of the Constitution. *See Henderson v. INS*, 157 F.3d 106, 120 (2d Cir.1998); *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir.) (holding district courts retain jurisdiction under both Section 2241 and the Suspension Clause, despite the sweeping language of Section 440(a) precluding judicial review of final orders of deportation), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

Conversely, the Ninth Circuit has determined Section 440(a) eliminated habeas review entirely. *See Hose v. INS*, 141 F.3d 932, 935 (9th Cir.1998) (holding District Courts do not retain habeas jurisdiction under either Section 2241 or the Suspension Clause).

Before *Sandoval*, this Circuit assumed a middle ground, concluding judicial review remained for serious constitutional errors or core constitutional concerns. *See Morel II*, 144 F.3d at 251 (holding courts retain constitutional habeas jurisdiction in situations involving "serious constitutional error").

In *Sandoval*, however, this Circuit has more definitively stated: "[D]istrict courts continue

Following *Sandoval,* this Circuit has stated:

> We retain jurisdiction to adjudicate statutory or constitutional claims such as those raised by [the petitioner], as well as to review denials of relief from deportation, in the case of most aliens other than criminal aliens.... However, following passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien such as [the petitioner]. Further, we conclude that any challenge by a criminal alien to the BIA's interpretation of the immigration laws or the constitutionality of these laws must be made through a habeas petition.

*Catney,* 178 F.3d at 195, 1999 WL 330421, at *4 (citing, *inter alia, Morel II,* 144 F.3d at 252, and *Sandoval,* 166 F.3d at 231–38).

In light of the *Sandoval* and *Catney* decisions, it appears subject matter jurisdiction exists over the Petition and Preliminary Injunction Application. The Respondents, citing *Sandoval,* concede: "The District Court has habeas jurisdiction to consider the [P]etition." Answer at 2. Accordingly, the Petition and Preliminary Injunction Application are considered below.

### B. *Standard of Review for Preliminary injunctive Relief*

As mentioned, Ceballos requests a preliminary injunction to enjoin the INS from deporting him pursuant to an administrative decision which is allegedly "inconsistent with the INA and Constitution." Petition at ¶ 26. He also requests the INS be enjoined from incarcerating him pending a decision in this matter, because he suffers from a brain injury. *See id.* at ¶ 27.

■ Injunctive relief is an extraordinary remedy. When reviewing the Preliminary Injunction Application of Ceballos, the following four factors (the "Injunction Factors") must be considered:

(1) the likelihood that [Ceballos] will prevail on the merits at final hearing;

(2) the extent to which [Ceballos] is being irreparably harmed by the conduct complained of;

(3) the extent to which [the public] will suffer irreparable harm if the preliminary injunction is issued; and

(4) the public interest.

*See, e.g., Pappan Enters. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 803 (3d Cir.1998); *AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir.), *cert. denied,* 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir.1994); *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3d Cir.1992); *Opticians Ass'n of Am. v. Independent Opticians of Am.,* 920 F.2d 187, 191–92 (3d Cir.1990); *Alessi v. Com. of Pennsylvania, Dep't of Pub. Welfare,* 893 F.2d 1444, 1447 (3d Cir. 1990); *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 799 (3d Cir. 1989); *Fechter v. HMW Indus., Inc.,* 879 F.2d 1111, 1116 (3d Cir.1989); *Then v. INS,* 37 F.Supp.2d 346, 351 (D.N.J.1998); *Jews for Jesus v. Brodsky,* 993 F.Supp. 282, 292 (D.N.J.), *aff'd,* 159 F.3d 1351 (3d Cir.1998); *Genovese Drug Stores, Inc. v. TGC Stores, Inc.,* 939 F.Supp. 340, 343 (D.N.J.1996); *Apollo Technologies v. Centrosphere Indus.,* 805 F.Supp. 1157, 1191 (D.N.J.1992).

■ The grant or denial of a preliminary injunction application lies within "'the sound discretion of the district judge, who must balance all of [the Injunction F]actors in making a decision.'" *FM 103.1, Inc. v. Universal Broad. of N.Y., Inc.,* 929 F.Supp. 187, 193 (D.N.J.1996) (citing *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir.1982); *Atlantic Coast Demolition v. Board of Chosen Freeholders of Atlantic Cty.,* 893 F.Supp. 301, 307 (D.N.J.1995)); *Then,* 37 F.Supp.2d at 352.

to have habeas jurisdiction under [Section] 2241." 166 F.3d at 231.

Of the Injunction Factors, the Circuit has placed particular emphasis on the likelihood of success on the merits and the probability of irreparable harm, stating: " '[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.' " *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)); *see also Instant Air*, 882 F.2d at 800; *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987); *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir.1984).

As explained more fully below, Ceballos has not established a reasonable likelihood of success on the merits. Specifically, Ceballos fails to demonstrate Section 440(d) was retroactively applied to him or violates the Equal Protection Clause of the Constitution. Because Ceballos has not demonstrated a reasonable likelihood of success on the merits, it is unnecessary to consider the remaining Injunction Factors.

### C. *Application of AEDPA Section 440(d)*

As discussed, Section 440(d) of the AEDPA, which amended in part Section 212(c), forecloses reliance by an alien on Section 212(c) if the alien committed any criminal offense covered in Section 241(a)(2)(A)(iii), (B), (C), or (D).[16] *See* AEDPA § 440(d), 110 Stat. 1214, 1217 (amending 8 U.S.C. § 1182(c)); *see also Sandoval v. Reno*, 166 F.3d at 228 (3d Cir.1999). Consequently, even if the criminal alien has maintained lawful, unrelinquished domicile in the United States for seven consecutive years pursuant to Section 212(c), he or she remains subject to deportation. *See* 8 U.S.C. § 1182(c).

As mentioned, it appears the Immigration Judge applied Section 440(d) to deny the 212(c) Application of Ceballos. *See* 5 June 1997 Decision. But for the application of Section 440(d), it appears Ceballos would have been eligible for a waiver pursuant to Section 212(c) because it appears he has maintained unbroken domicile in the United States for more than seven years. *See id.; see also* Petition at ¶ 3.

In support of habeas relief from the Final Order of Deportation, Ceballos alleges: "AEDPA [Section] 440(d) cannot be applied to Mr. Ceballos' case because it would constitute an improper retroactive [application] of Sec[tion] 212(c) relief in violation of congressional intent and the presumption against retroactivity." Petition at ¶ 29.

It appears, however, the AEDPA was not retroactively applied to Ceballos. While the Judgment of Conviction was entered on 27 January 1995, *see* Judgment of Conviction, deportation proceedings against Ceballos were not initiated until 12 August 1996. *See* 12 August 1996 Order to Show Cause. Ceballos, moreover, did not apply for a Section 212(c) waiver until 23 May 1997. *See* 5 June 1997 Decision at 1. As explained below, these critical facts reveal his case was not "pending" when Congress enacted the AEDPA.

■ The fact-specific application of Section 440(d) to Ceballos does not undercut the long-standing presumption against statutory retroactivity. In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Court, reaffirming the presumption against statutory retroactivity, established a two-prong test in determining whether a statute may be retroactively applied. The *Landgraf* test first requires a determina-

---

**16.** The offenses covered in Section 241 include aggravated felony, violation of or conspiracy to violate controlled substance laws, purchase or sale of certain firearms, espionage, treason, threats against the President, expeditions against friendly nations, violations of the Military Selective Service Act or

Trading With the Enemy Act and unauthorized entry or departure by aliens. *See* 8 U.S.C. § 1227(a)(2); *Salazar–Haro v. INS*, 95 F.3d 309, 310 n. 1 (3d Cir.), *cert. denied*, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997).

tion of whether "Congress has expressly prescribed the statute's proper reach." *Id.* at 269–70, 114 S.Ct. 1483. Second, in the absence of express specification of the temporal reach of a statute, consideration must be given to "whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 268, 114 S.Ct. 1483.

■ Addressing the first prong, it appears the AEDPA does not contain an express provision governing the temporal reach of Section 440(d). *See* AEDPA § 440(d), 110 Stat. 1214, 1217; *see also Lee v. Reno*, 15 F.Supp.2d 26, 44 (D.D.C.1998). Absent an express textual directive of prospectivity, the normal rules of construction apply. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). This Circuit, interpreting *Lindh*, has also stated: "[T]he rule of negative implication is part of the normal rules of statutory construction." *Sandoval*, 166 F.3d at 240 (citing *Lindh*, 521 U.S. at 326, 117 S.Ct. 2059).

Applying these principles, the *Sandoval* court concluded that both the legislative history and the principle of negative implication supported a prospective application of Section 440(d) of the AEDPA.[17] Consequently, the Circuit determined it was unnecessary to address the second prong of the *Landgraf* analysis because "the statu-

tory construction inquiry yield[ed] the answer that Congress intended prospectivity[.]" 166 F.3d at 240 (citing *Lindh*, 521 U.S. at 326, 117 S.Ct. 2059) (internal quotations omitted).

As stated, Section 440(d) of the AEDPA amended, in part, Section 212(c). Section 212(c) permitted deportable aliens convicted of certain crimes to apply for a waiver of deportation. Before the enactment of the AEDPA, this discretionary relief was unavailable only to aliens convicted of aggravated felonies or crimes of moral turpitude. Section 440(d) of the AEDPA, enacted 24 April 1996,[18] added drug offenses to the list of exceptions. *See* AEDPA § 440(d).

Ceballos urges a strictly prospective application of Section 440(d), which, in his view, would make him eligible for a 212(c) waiver. *See* Petition at ¶¶ 14, 29. Notwithstanding a prospective application of 440(d), as requested by Ceballos and mandated by *Sandoval*, Ceballos remains ineligible for a Section 212(c) waiver.

Significantly, the *Sandoval* court held only that "the AEDPA amendment to 212(c) was not to be applied to *pending* cases." 166 F.3d at 240 (emphasis added). In that case, the petitioner, Sandoval, had been convicted of marijuana possession in 1993. *See id.* at 228. In 1994, during the deportation hearing, Sandoval requested a four month stay of deportation, ostensibly because he was four months shy of meet-

---

17. The *Sandoval* court observed Section 440(d) did not contain an effective date. 166 F.3d at 241. It was then observed the legislative history of the AEDPA revealed that the Senate version of the AEDPA bill contained language applying the Section 440(d) amendment to pending cases. The House version of the bill did not, but instead contained language making amendments concerning alien terrorists applicable to pending cases. *Id.* The final bill, however, "dropped the language from the Senate bill ... but retained the language from the House bill...." *Id.*
The Circuit applied the rule of negative implication, and concluded: "Congress deliberately chose to make AEDPA Section 440(d) apply prospectively." *Id.*

18. The AEDPA was signed into law on 24 April 1996. As mentioned, however, Sections 440(d) and 440(a) bear no effective date. This Circuit has specifically held that Section 440(a) became effective on the date of enactment. *See Salazar–Haro v. INS*, 95 F.3d 309, 311 (3d Cir.), *cert. denied*, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). The Circuit has not addressed whether Section 440(d) possesses the same effective date. *See Sandoval*, 166 F.3d at 241. Irrespective of the effective date of Section 440(d), the *Sandoval* court has deemed the statutory provision inapplicable to 212(c) applications pending on the date of enactment. *See id.*

ing the seven-year residency requirement for Section 212(c) eligibility. *See id.* The immigration judge denied his request. Sandoval appealed the denial of the 212(c) application to the BIA. *See id.* While the appeal was pending, Congress enacted the AEDPA. *See id.*

The Circuit determined discretionary relief under Section 212(c) was available to Sandoval and directed the BIA to decide the merits of Sandoval's 212(c) application. *See id.* at 242. In so doing, it was reasoned: "The provision precluding discretionary relief for those convicted of drug offenses *[Section 440(d) ] was not in effect at the time Sandoval sought to petition under INA [Section] 212(c)."* 166 F.3d at 239 (emphasis added).

It appears, therefore, *Sandoval* strictly precludes the retroactive application of Section 440(d) to *pending* 212(c) applications. Consequently, the application of Section 440(d) to petitioners whose convictions pre-dated the enactment of AEDPA, but whose deportation proceedings and 212(c) applications post-dated the enactment of the statute, is not foreclosed by *Sandoval.*

This Circuit, moreover, has addressed a similar prospectivity issue in *Scheidemann v. INS,* 83 F.3d 1517 (3d Cir.1996). *Scheidemann* held that a related provision of the INA, which similarly rendered a class of felons ineligible for Section 212(c) relief, was not retroactive in application to convictions which pre-dated the enactment of the statute. The petitioner in *Scheidemann* was convicted of an aggravated felony in 1987. *See* 83 F.3d at 1519. At the time of his conviction, the statutory bar to discretionary relief for those convicted of an aggravated felony was not included in

the 212(c) waiver provision; it was added to Section 212(c) by Congress on 29 November 1990. *See id.* Scheidemann, although convicted prior to the statutory bar, did not request Section 212(c) relief until four years after the addition of the aggravated felony bar. *See id.* at 1519. The preceding conviction notwithstanding, the Third Circuit held: "Because petitioner applied for [Section] 212(c) relief after November 29, 1990 ... he is properly subject to the statutory bar." *Id.* at 1526.[19]

District Courts interpreting *Sandoval* have applied Section 440(d) to aliens whose convictions pre-dated its enactment, but who applied for Section 212(c) waivers after the enactment date. In *Cedillo–Gonzalez v. Garcia,* 38 F.Supp.2d 479 (W.D.Tex.1999), the court denied the 212(c) application of a petitioner, reasoning:

Here, Petitioner did not file his [Section] 212(c) application until after the effective date of [Section] 440(d). As such, the facts here do not fall within the four corners of Sandoval.... Consequently, the Court finds that *[Section] 440(d) does apply to Petitioner in spite of the fact that the underlying conviction that instigated his deportation occurred before the enactment of the 1996 amendments.*

*Id.* at 486 (emphasis added); *cf. Olvera v. Reno,* 20 F.Supp.2d 1062, 1066 n. 10 (S.D.Tex.1998) (stating "issue [of non-retroactivity] does not arise in this case because [petitioner's] deportation proceedings began after the AEDPA was enacted."); *Homayun v. Cravener,* 39 F.Supp.2d 837, 850–51 (S.D.Tex.1999) (granting 212(c) waiver application to pe-

---

**19.** The *Sandoval* Court observed the opinion in *Scheidemann* was issued without the benefit of the *Lindh* Court's elaboration of *Landgraf* retroactivity principles. 166 F.3d at 241. However, the *Sandoval* court also distinguished *Scheidemann* on the grounds that "in *Scheidemann,* where we held the 1990 amendments applicable to pre-enactment conduct, we specified that such construction

was applicable only to aliens who applied for discretionary relief after the effective date of the 1990 amendments." 166 F.3d at 241 (citing *Scheidemann,* 83 F.3d at 1526 & n. 12) (emphasis added). *Sandoval,* therefore, did not undercut the *Scheidemann* court conclusion that the AEDPA amendment could be applied to petitioners whose convictions pre-dated its enactment.

titioner when discretionary relief was requested before the enactment of Section 440(d); *Farquharson v. INS*, 31 F.Supp.2d 403, 414 (D.N.J.1999) (stating the "AEDPA § 440(d) should not be applied to criminal aliens who *filed applications for waivers before* the statute was enacted") (emphasis added).

In this case, as stated, the Judgment of Conviction was entered on 27 January 1995. *See* Judgment of Conviction. It is undisputed the conviction of Ceballos predated the enactment of the AEDPA on 24 April 1996. The deportation proceedings, however, were commenced well after the enactment date. Specifically, the Order to Show Cause, initiating the deportation proceedings against Ceballos, was issued on 12 August 1996. *See* 12 August 1996 Order to Show Cause. Ceballos subsequently made the 212(c) Application on 23 May 1997. *See* 5 June 1997 Decision at 1.

Even though his conviction on 27 January 1995 pre-dated the enactment of the AEDPA, the non-retroactivity concerns expressed in *Landgraf* and in *Sandoval* are not present here. *See Scheidemann*, 83 F.3d at 1519; *see also Fullwood v. Reno*, No. 98–4252, 1999 WL 350142, at *2 (E.D.Pa.21 May 1999) (citing *Then*, 37 F.Supp.2d at 358) (where deportation proceedings against petitioner commenced on 24 January 1997, following the effective date of Section 440(d), "there [was] no retroactive application against petitioner"); *Almon v. Reno*, 13 F.Supp.2d 143, 144 n. 1 (D.Mass.1998) (applying Section 440(d) where the Section 212(c) application of petitioner was not pending when the AEDPA was enacted); *Lee*, 15 F.Supp.2d at 26, 44 n. 26 (same).

Because the deportation proceedings and 212(c) Application were not pending when the AEDPA was enacted on 24 April 1996, Section 440(d) operates only prospectively towards Ceballos. *See Then*, 37

F.Supp.2d at 358; *Fullwood*, 1999 WL 350142 at *2. The Petition, therefore, insofar as it alleges the application of Section 440(d) violated the due process rights of Ceballos, is dismissed.

### D. *Equal Protection*

Ceballos additionally alleges Section 440(d) violates the Equal Protection Clause of the Fifth Amendment "by irrationally denying eligibility for relief to immigrants in deportation proceedings while preserving such relief for immigrants in exclusion proceedings." Petition at ¶ 31.[20] The Respondents, by contrast, argue that in light of the exclusive power of Congress to prescribe the terms and conditions of the entry and exclusion of aliens, judicial intervention in the form of an equal protection examination is inappropriate. *See* Answer at 4–5.

Section 440(d) of the AEDPA, by its terms, does not apply to excludable aliens. *See* AEDPA § 440(d); *see also Catney*, 178 F.3d 190, 193 n. 4 (citing *In re Fuentes–Campos*, Int.Dec. No. 3318, 1997 WL 269368 (BIA 14 May 1997)); *Olvera*, 20 F.Supp.2d at 1067. While Section 440(d) expressly rendered deportable aliens who committed certain offenses under Section 241 ineligible for Section 212(c) relief, discretionary relief remains available for aliens in exclusion proceedings. *See Catney*, 178 F.3d at 193 n. 4; *Fullwood*, 1999 WL 350142, at *2; *Olvera*, 20 F.Supp.2d at 1067; *see also In re Fuentes–Campos*, Int.Dec. No. 3318, 1997 WL 269368 (holding that aliens in exclusion proceedings could continue to seek Section 212(c) relief). That Section 440(d) makes such a distinction is not dispositive of a constitutional violation, however. *See Olvera*, 20 F.Supp.2d at 1067.

 The power to prescribe the terms and conditions under which an alien may be allowed to enter or remain in the coun-

---

**20.** "Deportable aliens" are those aliens physically present in the country who are subject to deportation. *See* 8 U.S.C. § 1251(a). "Excludable aliens" are those who are attempting to enter or return to the country who are subject to exclusion proceedings. *See* 8 U.S.C. § 1182(a); *see also Catney,* 178 F.3d at 193 n. 4.

try is exclusively committed to Congress, and is not subject to an equal protection challenge on habeas review. An examination of Section 440(d) on equal protection grounds would be inconsistent with the broad power of Congress to prescribe the terms and conditions of immigration policy. In *Lem Moon Sing v. United States,* 158 U.S. 538, 15 S.Ct. 967, 39 L.Ed. 1082 (1895), the Court stated:

'The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.'

*Id.* at 547, 15 S.Ct. 967 (1895); *see Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (stating Congress retains "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden"). Accordingly, the decision of Congress to deny Section 212(c) relief strictly to deportable aliens may not be reviewed.

■ Even if an equal protection analysis were appropriate on habeas review, it appears Section 440(d) is not inconsistent with equal protection principles. Equal protection does not require that all people be treated alike; it requires only that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

■ While due process and equal protection under the Fourteenth Amendment are limited to State action, the Fifth Amendment Due Process Clause prevents grossly unreasonable discrimination by the Federal government. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). A classification which violates the Equal Protection Clause of the Fourteenth Amendment also is invalid under the Due Process Clause of the Fifth

Amendment. *See Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

The level of judicial scrutiny applicable in assessing whether governmental classifications comply with equal protection guarantees depends upon the type of classification. Suspect and quasi-suspect classifications require heightened scrutiny. *See City of Cleburne,* 473 U.S. at 439, 105 S.Ct. 3249. Other classifications need only be rationally related to a legitimate government object to be held constitutional, a more relaxed level of scrutiny. *See id.; Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (under rational basis review, a classification "is accorded a strong presumption of validity"); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ The challenged classification of Section 440(d) concerning excludable and deportable aliens is not a suspect or quasi-suspect classification. As such, it is presumed to be valid and will be sustained if it is rationally related to a legitimate governmental interest. *See Mathews v. Diaz,* 426 U.S. 67, 78–84, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Francis,* 532 F.2d at 272; *Waddell v. BIA,* No. 98–1873, 1999 WL 151661, at *10 (E.D.La.11 Mar.1999); *Cedillo–Gonzalez,* 38 F.Supp.2d at 487; *Fullwood,* 1999 WL 350142, at *2–3. Accordingly, any classifications resulting from the application of Section 440(d) will be sustained so long as a rational relationship exists between the statute and the legitimate governmental objective. *See id.*

This Circuit has not squarely addressed the Equal Protection issue raised by Ceballos. *See Sandoval,* 166 F.3d at 242 (declining to reach the Equal Protection issue because Section 440(d) was found inapplicable to the petitioner). The Seventh Circuit, however, has recently held the distinctions drawn between deportable and excludable aliens were rational, and did not violate the Equal Protection guarantee of the Fifth Amendment. *See La-*

*Guerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998). The *LaGuerre* court explained:

> A rational and indeed sensible reason can readily be assigned to Congress's more lenient treatment of excludable as distinct from deportable aliens: it creates an incentive for deportable aliens to leave the country—which is after all the goal of deportation—without their having to be ordered to leave at the government's expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.

*Id.; see Cedillo-Gonzalez,* 38 F.Supp.2d at 488 (adopting reasoning of *LaGuerre* court).

It appears, moreover, a traditional distinction exists between deportable and excludable aliens. *See Fullwood,* 1999 WL 350142, at *2–3; *Waddell,* 1999 WL 151661, at *8.

> When [Section 212(c) ] was adopted as part of the 1952[INA], Congress distinguished between the exclusion of aliens who arrived at our shores seeking admission to the United States, and the deportation of aliens who were physically present within our borders. The grounds for exclusion were broader than those for deportation, and the procedural protections were narrower in exclusion proceedings than in deportation proceedings.

*Olvera,* 20 F.Supp.2d at 1066 (citing *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982)); *see Waddell,* 1999 WL 151661, at *8 ("United States immigration law has traditionally distinguished between the exclusion of aliens who arrive at our shores seeking admission and the deportation of aliens who are physically present within the country."). Before the enactment of Section 440(d), deportable aliens could avail themselves of several procedural advantages in deportation proceedings which were not available to aliens in exclusion proceedings. *See Olvera,* 20 F.Supp.2d at 1070; *Fullwood,* 1999 WL 350142, at *2–3; *Waddell,* 1999 WL 151661, at *11.[21]

Section 440(d), therefore, may have been enacted at least in part to place deportable and excludable aliens on more equal procedural footing. *See Olvera,* 20 F.Supp.2d at 1070 ("Congress may rationally have decided that deportable aliens did not deserve any extra opportunity for administrative discretion."); *Waddell,* 1999 WL 151661, at *11. Consequently, "[i]t was· certainly not irrational for Congress to provide the discretionary relief in [Section 212(c) ] only to the narrow class of aliens who, after residing legally in the United States for at least seven years, returned from a trip abroad only to wind up in exclusion proceedings." *Olvera,* 20 F.Supp.2d at 1070.

Because a rational basis exists for the challenged classification under Section 440(d), the Equal Protection claim of Ceballos is without merit, and cannot be sustained.

*Conclusion*

For the reasons discussed, the Preliminary Injunction Application is denied; the

---

**21.** Specifically, an alien traditionally could be excluded from the country because of poor health and the mere likelihood of becoming a public charge, *see* 8 U.S.C. § 1182(a)(1)(A) & 4, while such grounds were insufficient for deportation. Additionally, the evidentiary standard for exclusion was lower than the corresponding standard for deportation. *Compare* former 8 U.S.C. § 1182(a)(2)(A) with former 8 U.S.C. § 1251(a)(2). There also were "significant procedural differences between exclusion and deportation proceedings ... Exclusion proceedings were generally conducted at the port of entry, sometimes with little advance warning[, while d]eportation proceedings ... were generally conducted near the alien's residence, often after the alien had been convicted of a crime that made him [or her] deportable." *Olvera,* 20 F.Supp.2d at 1069–70 (citations omitted). Lastly, the burden of proof in exclusion proceedings was placed on the alien, but was placed on the Government in deportation proceedings. *See* 8 U.S.C. § 1361; *Olvera,* 20 F.Supp.2d at 1070.

Petition is dismissed. There is no probable cause to appeal.