**Julian Lancelot BURY, Petitioner,**

v.

**Janet RENO, Attorney General, et al., Respondents.**

**No. CIV. A. 99–2906.**

United States District Court, E.D. Pennsylvania.

June 9, 2000.

Steven A. Morley, Philadelphia, PA, for Petitioner.

Jomes G. Sheehan, U.S.Attorney's Office, Philadelphia, PA, for Respondents.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Julian Lancelot Bury, a permanent resident currently subject to an order of deportation, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he seeks a review of the determination of respondents U.S. Attorney General Janet Reno, *et al.*, that he is ineligible for discretionary relief under a statutory exception that allows the Attorney General to waive deportation. For the following reasons, I conclude that petitioner is eligible for discretionary relief from deportation.

*Background*

This case can be traced to 1995, when petitioner Bury, who has been a lawful permanent resident of the United States since 1983, was convicted of aggravated assault and sentenced to two to five years in prison. He served less than five years. Petitioner's conviction came to the attention of the Immigration and Naturalization Service ("INS"), and on April 16, 1996, the INS issued an order to show cause why he should not be deported pursuant to § 241(a)(2)(A)(iii) of the Immigration and Naturalization Act ("INA"), codified as 8 U.S.C. § 1251(a)(2)(A)(iii), under which aliens committing aggravated felonies were deportable.[1] On June 26, 1996, the INS filed the order to show cause with the immigration court, and a deportation hearing was held. On April 24, 1998, the immigration judge ruled that plaintiff should be deported.

Petitioner now argues, as he did at his deportation hearing and on appeal to the Board of Immigration Appeals, that he is eligible for discretionary relief from deportation from the Attorney General under § 212(c) of the INA, codified as 8 U.S.C. § 1182(c), and that the immigration judge erred in refusing to consider the merits of his request for discretionary relief from deportation under § 212(c). Respondents contend that petitioner is ineligible for such relief due to the changes in immigration law wrought by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.No. 104–132, 110 Stat. 1214 ("AEDPA").

Prior to the AEDPA, § 212(c) of the INA granted the Attorney General the discretion to waive deportation for permanent resident aliens residing in the United States for seven consecutive years, unless the alien had been convicted of an aggravated felony and served at least 5 years imprisonment for that crime. The AEDPA expanded the crimes and circumstances precluding the Attorney General's exercise of discretion under § 212(c) to include, among others, the crime of which petitioner was convicted.[2] Thus, under the law prior to the AEDPA, petitioner would be eligible for discretionary relief from deportation under § 212(c), but under the

---

1. The past tense is used here because § 241 of the INA, codified at 8 U.S.C. § 1251, was overhauled by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

2. The AEDPA included among those convictions for which discretionary relief was not available aggravated felony convictions, regardless of the amount of time served. *See Mattis v. Reno,* 2000 WL 554957, *3 (1st Cir.2000) (characterizing AEDPA § 440(d) as removing availability of § 212(c) relief for aggravated felons). Petitioner was convicted of aggravated assault, an aggravated felony.

AEDPA, petitioner would be ineligible for such relief.

*Analysis*

There is no effective date in § 440(d) of the AEDPA, which amends the list of crimes that remove the Attorney General's discretion under § 212(c) to grant relief from deportation. There has been some controversy over whether § 440(d) operates retroactively and applies to cases that were pending at the time AEDPA was enacted.[3] That controversy was resolved in this circuit by the Court of Appeals for the Third Circuit, which concluded that "Congress did indeed express an intent that AEDPA's amendment to INA § 212(c) should not apply to cases pending on the date of enactment." *Sandoval v. Reno,* 166 F.3d 225, 242 (3d Cir.1999); *accord Goncalves v. Reno,* 144 F.3d 110, 133 (1st Cir.1998) ("A careful reading of the text of AEDPA, confirmed by the an examination of its legislative history, demonstrates that Congress did not intend AEDPA § 440(d) to apply retroactively to pending applications of § 212(c) relief ..."), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS,* 157 F.3d 106, 130 (2d Cir.1998) ("Accordingly, since [petitioner's] deportation proceeding was pending on the date of the statute's enactment, we hold that § 440(d) does not apply to him."), *cert. denied sub nom. Reno v. Navas,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999).

The court of appeals in *Sandoval* did not elaborate on what it meant by the words "cases pending." Respondents argue that a case is pending only when an order to show cause is filed with the immigration court, and because the order to show cause in this case was not filed until June 26, 1996, more than two months after the AEDPA was enacted, petitioner's proceedings are governed by the AEDPA amendments. Petitioner contends that the *issuance* of the order to show cause on April 16, 1996 (not the *filing* of the order on June 26, 1996), constructively triggered the commencement of deportation proceedings against him, and thus his case was pending prior to the enactment of the AEDPA on April 24, 1996. The question here, then, is whether a deportation proceeding against an individual is pending upon the *issuance* of an order to show cause by the INS or the *filing* of an order to show cause with the Immigration Court.[4]

Respondents' brief provides a thorough and informative history of the initiation of deportation proceedings in the immigration context, as well as a litany of administrative regulations and cases suggesting that deportation proceedings officially commence with the filing of the order to show cause with the immigration judge.[5] However, the regulations do not address the judicial questions of pendency and ret-

---

3. The Attorney General started the controversy with her decision in *Matter of Soriano,* Interim Decision 3289 (A.G. Feb. 21, 1997). In that decision, the Attorney General ruled that the AEDPA's § 440(d) applied retroactively to all cases pending at the time of AEDPA's enactment.

4. I note that at least one court has taken the view that the pendency of a case is triggered not by the issuance or filing of an order to show cause, by a petitioner's application for relief under § 212(c). *See Almonte v. Reno,* 27 F.Supp.2d. 106, 109 (D.Mass.1998). I could find no other cases adopting this approach and disagree with it.

5. Respondents also argue that their determination that the AEDPA applies to petitioner's case is entitled to the deference due to administrative agencies' interpretations of their governing statutes under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, the Court of Appeals for the Third Circuit doubted in *Sandoval* that *Chevron* deference was appropriate to a determination of the effective date of a statute. *See Sandoval,* 166 F.3d at 239–40. For similar reasons, I doubt that *Chevron* deference is appropriate where the question is whether a case was "pending" prior to that effective date.

roactivity now before this Court,[6] and the cases are not on point.[7]

Since the parties filed their briefs in this case, an abundance of case law has sprung forth on this issue, almost all of it favoring the petitioner's position. Within this district, at least two judges have held that a case is pending for the purpose of the retroactivity of AEDPA § 440(d) when the INS issues and serves an order to show cause. *See Sciglitano v. Holmes,* 2000 WL 675696, *3 (E.D.Pa.2000) ("I conclude that once the INS issued and served the Order to Show Cause, Petitioner's case was constructively pending."); *Canela v. United States Department of Justice,* 64 F.Supp.2d 456, 458 (E.D.Pa.1999) ("The court finds that Mr. Canela's case was pending as of the date he received the OSC [order to show cause], which was prior to AEDPA's enactment."). At least two circuit courts of appeals and a number of district courts also have so held. *See Wallace v. Reno,* 194 F.3d 279, 287 (1st Cir.1999) ("[W]e think that when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance."); *Alanis–Bustamante v. Reno,* 201 F.3d 1303, 1309–10 (11th Cir.2000) (issuance of order to show cause plus warrant of detainer sufficient to trigger pendency and save petitioner's eligibility for discretionary relief from § 440(d) of the AEDPA); *McKenzie v. Reno,* No. 97–11285, 1998 U.S. Dist. LEXIS 22059, at *6 n. 2 (D.Mass. Dec. 10, 1998) ("No later than when the OSC has been issued and served on the alien, the deportation proceeding or 'case' is 'pending'. . . ."); *Mercado–Amador v. Reno,* 47

F.Supp .2d 1219, 1224 (D.Or.1999) ("From a due process standpoint, Mercado was subject to the deportation power of the INS as of the time the show cause order issued."). Each of these cases rejected the contention that a case "pending" under the retroactivity analysis only as of the time the order to show cause is filed, and I am unpersuaded that the filing of the order to show cause with the immigration court is the salient event for the purpose of determining the retroactivity of § 440(d) of the AEDPA.

It makes good sense for the *issuance* of the order to show cause, rather than its *filing,* to be the meaningful event for the purpose of determining whether a proceeding was subject to a newly enacted law. First, reliance and the reasonable expectations of individual litigants are of paramount concern in assessing the retroactivity of a statute. *See Wallace,* 194 F.3d at 286 (citing *Martin v. Hadix,* 527 U.S. 343, 358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999); *Lindh v. Murphy,* 521 U.S. 320, 327–38, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). In a deportation proceeding, once the order to show cause is issued, "the deportation process has effectively begun and expectations properly form, even if there is no actual reliance." *Id.* at 287. When an alien receives an order to show cause, she looks to the law as it exists at that time; the mere filing of that order with the immigration court is a fairly inconsequential event from the standpoint of an alien's expectations and reliance. Therefore, the issuance of the order to show cause is the appropriate event on which pendency should turn, and the law

6. *See Wallace v. Reno,* 194 F.3d 279, 287 (1st Cir.1999) ("In this case we are not concerned with the INS's internal time tables, starting points, due dates, and the like but with the judicial question of retroactivity. This question turns on considerations unrelated to the purpose of INS regulations—primarily (in the absence of statutory guidance) with the evil Congress sought to prevent and the realities of reasonable reliance or settled expectations on the part of litigants.").

7. Moreover, at least one of the cases relied upon respondents suggests that the issuance of the order to show cause is the event that triggers the pendency of a deportation case for retroactivity purposes. *See Ceballos de Leon v. Reno,* 58 F.Supp.2d 463, 474 (D.N.J. 1999) (referring to date of issuance of order to show cause in concluding that deportation proceedings had commenced after the enactment of the AEDPA).

as it stood upon the issuance of the order to show cause should apply.

Second, because both the issuance and the filing of the order to show cause are administrative tasks within the control of the INS, the pendency question should be construed in favor of the potential deportee and against the INS.

> As of the time the order to show cause was issued, the INS ha[s] the power to arrest [an alien]; commencement of the case in immigration court [is] subject only to the vagaries of administrative scheduling. From a due process standpoint [a petitioner is] subject to the deportation power of the INS as of the time the show cause order issued; fairness requires that the INS, having placed [petitioner] under its authority, should also live with the results of that decision.

*Canela,* 64 F.Supp.2d at 458 (quoting *Wallace v. Reno,* 24 F.Supp.2d 104, 113 (D.Mass.1998), *aff'd,* 194 F.3d 279 (1st Cir. 1999)). In the instant case, the order to show cause was issued more than a week before the AEDPA was enacted, but was not filed with the immigration court for more than two months. The INS chose to set the wheels of petitioner's deportation in motion prior to the enactment of the AEDPA, and applying the AEDPA to petitioner would relieve the INS of the consequences of its choice and permit petitioner to be prejudiced by the INS's administrative inefficiencies or, worse still, purposeful delay. This, the Court will not do.

I agree with the numerous courts that have held that a case in which the order to show cause issued prior to the enactment of the AEDPA was "pending," for the purpose of retroactivity, prior to the AEDPA. Therefore, the crimes added by AEDPA § 440(d) to those precluding eligibility for discretionary relief under § 212(c) do not

apply to cases in which an order to show cause issued before April 24, 1996. The order to show cause in the instant case issued on April 16, 1996, eight days before the AEDPA was enacted. Therefore, I conclude that § 440(d) of the AEDPA does not apply to petitioner, and that petitioner is eligible for discretionary relief under § 212(c).[8]

*Conclusion*

For the foregoing reasons, I conclude that petitioner should have been afforded a hearing on the merits of his request for discretionary relief under § 212(c) of the INA. Because he was not, the case must be returned to the immigration judge for such a hearing.

An appropriate Order follows.

### ORDER

AND NOW, this 9th day of June, 2000, upon consideration of the petition for a writ of habeas corpus and complaint for declaratory and injunctive relief of Julian Lancelot Bury (Document No. 1) and the response thereto, and having concluded that petitioner's case was pending prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 and that petitioner is therefore eligible for discretionary relief from deportation, it is hereby ORDERED that the petition of Julian Lancelot Bury is GRANTED.

IT IS FURTHER ORDERED that this case is REMANDED to the Immigration Judge for consideration of the merits of petitioner's claim for discretionary relief pursuant to § 212(c) of the Immigration and Naturalization Act, codified at 8 U.S.C. § 1082(c), prior to its amendment by § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 and repeal by § 304(b) of the Illegal Immigra-

---

**8.** Because I conclude that § 440(d) of the AEDPA does not apply to cases in which an order to show cause issued prior to the enactment of the AEDPA, I need not reach petitioner's equal protection argument, nor do I ad-

dress petitioner's contention that the AEDPA's amendments do not apply to petitioners who were convicted of crimes prior to the enactment of the AEDPA.

tion Reform and Immigrant Responsibility Act of 1996.

IT IS FURTHER ORDERED that respondents are enjoined from deporting petitioner, if at all, until after the administrative and judicial appellate processes with respect to respondents' ruling is exhausted.